STATE OF NORTH CAROLINA v. DANNY BLACK

No. 9128SC841

(Filed 3 August 1993)

1. **Evidence and Witnesses § 120 (NCI4th)— Rape Shield Statute — prior sexual conduct — exclusion of cross-examination**

    In a prosecution of defendant for an alleged series of sexual assaults involving his two stepdaughters, the trial court properly applied the Rape Shield Statute in refusing to permit defendant to cross-examine one stepdaughter concerning whether she had previously engaged in sexual intercourse with two specific persons where the stepdaughter testified at the *in camera* hearing that she had not had sex with either person, no evidence was offered to contradict her testimony, and there was thus no evidence of sexual activity the relevance of which the trial court was obligated to determine. N.C.G.S. § 8C-1, Rule 412.

    **Am Jur 2d, Rape §§ 55 et seq.**

2. **Evidence and Witnesses § 2973 (NCI4th)— fraud committed by witness — admissibility to show truthfulness — trial not affected by exclusion**

    In a prosecution of defendant for an alleged series of sexual assaults involving his two stepdaughters, the trial court's

STATE v. BLACK

[111 N.C. App. 284 (1993)]

error in refusing to permit defendant to cross-examine the victims' mother concerning alleged fraud in her dealings with government assistance programs was not prejudicial, although the proffered evidence appeared to have been probative of the witness's truthfulness, since defendant presented no argument suggesting that exclusion of this evidence affected the outcome of the trial. N.C.G.S. § 8C-1, Rule 608(b).

**Am Jur 2d, Witnesses §§ 563 et seq.**

3. **Evidence and Witnesses § 3106 (NCI4th)— witness's corroborative statement—"new information"—statement admissible**

The trial court did not err by allowing a detective to read a statement given by the assault victims' brother for the purpose of corroborating the brother's earlier testimony, even though the statement may have included "new" information, since the "new" material simply gave a further description of one victim's appearance at the time of two incidents involving defendant, and it tended to add credibility to, and in no way contradicted, the brother's trial testimony.

**Am Jur 2d, Witnesses §§ 632 et seq.**

4. **Evidence and Witnesses § 755 (NCI4th)— defendant's use of marijuana—evidence erroneously admitted—error cured by defendant's subsequent testimony**

Even if the trial court erred in allowing a doctor who examined the sexual assault victim to testify that the victim told her that defendant used marijuana, such error was cured where defendant subsequently took the stand and testified to his use of and addiction to marijuana.

**Am Jur 2d, Appeal and Error § 806.**

5. **Rape and Allied Offenses § 4 (NCI3d)— rape of stepdaughters—evidence of Accommodation Syndrome—admission harmless error**

In a prosecution of defendant for sexual assaults of his stepdaughters, the trial court erred in allowing a doctor who examined one victim to testify that she suffered from "Accommodation Syndrome," since the court gave no limiting instruction and the jury was allowed to consider this evidence for substantive as well as corroborative purposes; however, de-

fendant failed to show that absent the error there was a reasonable probability that a different result would have been reached.

**Am Jur 2d, Rape § 68.3.**

6. **Evidence and Witnesses § 2180 (NCI4th)— cross-examination of medical witness—use of prior medical records not allowed— no error**

In a prosecution of defendant for sexually assaulting his stepdaughters, the trial court did not err in refusing to allow defendant to utilize one victim's prior medical records in cross-examination of the State's expert medical witness, since defendant sought to question the witness with regard to the contents of data which the expert had never before contemplated or used in any way to formulate her opinion and which also was not contained in any recognized learned treatise; an expert cannot be examined concerning information contained in documents not used in formulating the expert's opinion; and, if defendant wanted information concerning the contents of the prior records and implications thereof to any current diagnosis of sexual abuse, defendant could have called his own expert witness. N.C.G.S. § 8C-1, Rules 703, 705.

**Am Jur 2d, Expert and Opinion Evidence §§ 74 et seq.**

7. **Rape and Allied Offenses § 5 (NCI3d)— second-degree rape— stepfather's authoritative position—victims' fear—sufficient showing of constructive force**

The trial court did not err in denying defendant's motion to dismiss the charges of second-degree rape, since evidence of the victims' fear of defendant combined with defendant's authoritative position as a stepparent would allow a jury reasonably to infer that defendant used his position of power to enforce his stepdaughters' participation in the sexual acts, thereby satisfying the element of constructive force.

**Am Jur 2d, Rape § 4.**

8. **Rape and Allied Offenses § 6 (NCI3d)— second-degree rape— instructions on force proper**

In a prosecution of defendant for sexual assaults on his stepdaughters, the trial court's instruction to the jury on the element of force needed to support the charges of second-

STATE v. BLACK

[111 N.C. App. 284 (1993)]

degree rape was proper where the instruction indicated that the jury "may find" the existence of constructive force in intrafamilial situations, and the jury was properly informed that it could not find defendant guilty of rape unless it also found that (1) the victims did not consent and (2) the sexual intercourse was against the victims' will.

**Am Jur 2d, Rape § 7.**

Appeal by defendant from judgments entered 6 March 1991 by Judge C. Walter Allen in Buncombe County Superior Court. Heard in the Court of Appeals 20 October 1992.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General James E. Magner, Jr., for the State.*

*Public Defender J. Robert Hufstader, by Assistant Public Defender Robert W. Clark, for defendant-appellant.*

JOHN, Judge.

Defendant appeals the following convictions arising from an alleged series of sexual assaults involving his two step-daughters: (1) three counts of second degree rape; (2) three counts of incest; (3) three counts of taking indecent liberties with children; and (4) one count of crime against nature. After examining defendant's multiple assignments of error, we hold the trial court committed no prejudicial error.

The State's evidence tended to show defendant and the victims' mother began living together in 1975 and were married in 1978. The younger victim, Ms. B, who was fifteen years old at trial, testified defendant had vaginal intercourse with her in both the summer of 1989 and March of 1990. On each occasion, Ms. B went either to defendant's room or to the basement where defendant instructed her to take off her clothes and then had sexual intercourse with her. When Ms. B told defendant during the 1989 incident, "Danny, that hurts," he replied "[t]ake it like a woman." With regards to the 1990 occasion, defendant directed Ms. B's little brother to act as a lookout and make sure no one came in. Ms. B further testified concerning instances of anal intercourse while she was menstruating and instances of defendant placing his finger in her vagina. Ms. B stated that she was afraid of defendant, that defendant hit her when she informed him that she was going to

tell someone, and that he threatened "[i]f anyone ever tried to have him sent to prison, that he would kill them or have them killed."

The older victim, Ms. T, was twenty years old at the time of trial and testified defendant began sexually assaulting her when she was around six years old. In June of 1987, while other family members were absent, defendant ordered Ms. T to remove her clothes, whereupon he had sexual intercourse with her and ejaculated on her stomach. Regarding her fear of defendant, Ms. T stated, "I've been scared of him all my life. . . . He would just throw violent fits and stuff, punch holes in the walls, all kinds of stuff." On more than one occasion Ms. T advised her mother of defendant's conduct, but defendant convinced her mother nothing had happened or instructed Ms. T to tell her mother that she had lied.

Karen Black, the victims' mother, testified Ms. T told her more than once that defendant was "messing" with her. Ms. Black further testified she received a phone call from defendant in March of 1990 in which he admitted "all of the stuff that [her daughters] had said he did."

The victims' stepbrother, who was fourteen years old at trial, testified his father had been alone with Ms. B in the basement, in defendant's bedroom, and in the woods near a "transfer station." On one occasion, defendant ordered him to watch for his mother and call out when she returned home.

Judy A. Hensley, a detective with the Asheville Police Department, testified she investigated the charges against defendant and interviewed the parties involved. Hensley was also permitted, for corroborative purposes, to read statements from each victim and from their stepbrother.

Dr. Andrea Gravatt, a pediatrician and Child Medical Examiner, was accepted as an expert witness in pediatrics as well as in the diagnosis and treatment of child sexual abuse. Dr. Gravatt testified she examined Ms. B on 20 March 1990 at the request of a social worker. Prior to the physical examination, Dr. Gravatt was informed by Ms. B that defendant had sexually abused her. The vaginal examination of Ms. B was conducted in part with the use of an adult size speculum, unusual considering her age, and Ms. B also exhibited diminished rectal tone, a condition consistent with a history of anal intercourse. Dr. Gravatt stated her opinion that

the victim exhibited behavioral characteristics indicative of sexual abuse, as well as of Sexual Abuse Accommodation Syndrome, a phenomenon common in sexually abused children.

Defendant testified on his own behalf and denied the allegations against him. He also presented several witnesses who asserted he was a truthful person. The State presented rebuttal evidence tending to show defendant was not truthful.

## I.

[1] By means of his first assignment of error, defendant contends the trial court erred by refusing to permit him to cross-examine Ms. B concerning whether she had previously engaged in sexual intercourse with either Clifton Stines or Frankie Orr. This contention is without merit.

The use of an alleged rape victim's prior sexual behavior as evidence is governed by North Carolina's Rape Shield Statute, N.C.R. Evid. 412. This statute was designed to protect the complainant from unnecessary humiliation and embarrassment while shielding the jury from unwanted prejudice that might result from admitting evidence of sexual conduct which has little relevance. *State v. Younger*, 306 N.C. 692, 696, 295 S.E.2d 453, 456 (1982). Under procedures mandated by this statute, the proponent of such evidence (herein, the defendant) must first apply to the trial court for a determination of the relevance of the complainant's sexual behavior. Rule 412(d). The trial court is then required to "conduct an *in camera* hearing . . . to consider the proponent's *offer of proof* and the argument of counsel . . . ." Rule 412(d) (emphasis added).

Ms. B was the sole witness at the *in camera* hearing and she denied having sexual intercourse with both Stines and Orr. Although defendant's counsel asserted that Stines would testify to the contrary, Stines never testified nor was any other evidence offered to contradict Ms. B's testimony. Under these circumstances, the trial court properly refused to allow defendant to question Ms. B before the jury regarding her sexual relations with these men. Rule 412(d) contemplates that the party desiring to introduce evidence of a rape complainant's past sexual activity must *offer some proof* as to both the existence of such activities and the relevancy thereof. Since Ms. B's *denial* constituted the only "evidence" on this point, there was *no evidence of sexual activity*

STATE v. BLACK

[111 N.C. App. 284 (1993)]

the relevance of which the trial court was obligated to determine. *See State v. Degree*, 322 N.C. 302, 306, 367 S.E.2d 679, 682 (1988). The type of cross-examination attempted by defendant is precisely that which Rule 412 was intended to prohibit and the trial court correctly applied the Rape Shield Statute. *Id.*

## II.

**[2]** Defendant next argues the trial court erred by refusing to permit him to cross-examine Karen Black concerning alleged fraud in her dealings with government assistance programs. According to defendant, this line of questioning relates to a specific instance of misconduct involving deceit and therefore cross-examination was proper under N.C.R. Evid. 608(b). We agree that prohibiting cross-examination on this matter was error, but hold it to be non-prejudicial.

Rule 608(b) permits questioning of a witness with respect to specific instances of conduct (as opposed to opinion or reputation evidence) in the narrow situation where:

> (1) the *purpose* of producing the evidence is to impeach or enhance credibility by proving that the witness' conduct indicates [her] character for *truthfulness or untruthfulness*; and (2) the conduct in question *is in fact probative* of truthfulness or untruthfulness and is *not too remote in time*; and (3) the conduct in question did *not result in a conviction*; and (4) the inquiry into the conduct *takes place during cross-examination*.

*State v. Morgan*, 315 N.C. 626, 634, 340 S.E.2d 84, 89-90 (1986) (emphasis in original). Even where these four criteria are established, the trial court may, in its discretion, exclude the proffered evidence if it determines that the risk of unfair prejudice *substantially outweighs* the probative value. *Id.* at 634, 340 S.E.2d at 90. Even where the trial court improperly excludes certain evidence, moreover, a defendant is not entitled to a new trial unless he can establish prejudice as the result of this error. *State v. Easterling*, 300 N.C. 594, 605, 268 S.E.2d 800, 807 (1980). The test for prejudicial error is whether a different result would have been reached if the error had not been committed. N.C.G.S. § 15A-1443(a) (1988).

Although the proffered evidence appears to have been probative of the witness' truthfulness, and even assuming the trial court erred by refusing to allow cross-examination, defendant has presented no argument suggesting that exclusion of this evidence

affected the outcome of the trial. Moreover, we determine that it did not.

## III.

[3] Defendant next maintains the trial court erred by allowing Detective Hensley to read a statement given by the victims' brother for the purpose of corroborating the brother's earlier testimony. Defendant argues he was prejudiced because the statement was in fact not corroborative. While we observe defendant has properly preserved his objection by specifically objecting to the allegedly incompetent portions of the detective's testimony, *see State v. Benson*, 331 N.C. 537, 548-49, 417 S.E.2d 756, 763-64 (1992), we nonetheless find his argument unpersuasive.

For the prior statement of a witness to be admissible for purposes of corroboration, it is not required that the earlier version be a mirror reflection of the account given by the witness at trial. "Corroborative" has been defined by our Supreme Court as meaning "to strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." *State v. Higginbottom*, 312 N.C. 760, 769, 324 S.E.2d 834, 840 (1985) (*quoting State v. Case*, 253 N.C. 130, 135, 116 S.E.2d 429, 433 (1960), *cert. denied*, 365 U.S. 830, 5 L.Ed.2d 707 (1961)). A prior statement thus is corroborative if it tends to add weight or credibility to the testimony of the witness in court, *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573 (1986), and is substantially similar to the in-court testimony. *State v. Williamson*, 333 N.C. 128, 136, 423 S.E.2d 766, 770 (1992). Additional or "new" information may even be introduced so long as it (1) tends to add weight or credibility to the witness' in-court testimony and (2) does not contradict this testimony. *State v. Ramey*, 318 N.C. at 469, 349 S.E.2d at 573-74.

The victims' step-brother testified *at trial* that he had once observed defendant and Ms. B go into the woods near the transfer station and that upon returning Ms. B "just [got] in the car." He further testified that on another occasion he witnessed Ms. B and defendant go into either the basement or defendant's bedroom, that defendant told him to yell if his mother returned, and that Ms. B's only response upon returning was to bite her nails. Review of this witness' *prior statement* as testified to by Hensley reveals only two instances of "new" information: (1) Ms. B was dusting off her skirt when she returned from the woods near the transfer station and (2) Ms. B was "sniffling as though she had been crying"

on the occasion that defendant told him to watch for the victims' mother. This "new" material further describes the appearance of Ms. B at the time of the two incidents, tends to add credibility to, and in no way contradicts the step-brother's trial testimony. Therefore the trial court did not err in admitting this prior statement.

## IV.

[4] Defendant further asserts he is entitled to a new trial because the trial court erroneously permitted Dr. Gravatt to testify Ms. B told her defendant used marijuana. We disagree.

Assuming *arguendo* that the trial court improperly allowed this comment during direct examination by the State, any error was cured by defendant's subsequent testimony. After the State rested, defendant took the stand and testified on direct examination to his use of and addiction to marijuana. He thus waived any objection to previous testimony on this same matter. *State v. Walker*, 54 N.C. App. 652, 655, 284 S.E.2d 155, 157-58 (1981).

## V.

[5] Defendant next contends the trial court erred by allowing Dr. Gravatt to state that in her opinion Ms. B suffered from "Accommodation Syndrome." Defendant's contention is valid, however we hold this error to be non-prejudicial.

In *State v. Stallings*, 107 N.C. App. 241, 419 S.E.2d 586 (1992), this Court held that evidence of Accommodation Syndrome is inadmissible as *substantive evidence* to show that a first degree sexual offense had occurred. Citing the recent North Carolina Supreme Court decision of *State v. Hall*, 330 N.C. 808, 412 S.E.2d 883 (1992), this Court noted two difficulties exist in admitting such evidence. *First*, Accommodation Syndrome is not designed to determine if a child has in fact been abused; rather it assumes abuse has occurred. *Second*, there is potential for prejudice because the jury may accord too much weight to experts who voice medical conclusions "which [are] drawn from diagnostic methods having limited merit as fact-finding devices." *State v. Stallings*, 107 N.C. App. at 251, 419 S.E.2d at 592. Both *Hall* and *Stallings*, each decided after defendant's trial, indicate that while testimony of Accommodation Syndrome is not admissible as substantive evidence, it may be admitted for corroborative purposes, *provided*: the trial court determines (1) it should not be excluded under N.C.R. Evid. 403 *and* (2) this evidence would be helpful to the jury pursuant to

N.C.R. Evid. 702. If admitted for corroborative purposes, the jury *must* be given a limiting instruction. *State v. Stallings*, 107 N.C. App. at 250, 419 S.E.2d at 592.

The court below gave no limiting instruction and therefore the jury was allowed to consider this evidence for substantive as well as corroborative purposes. Although this was error, defendant, like the defendant in *Stallings*, has failed to show that absent the error, there is a reasonable probability that a different result would have been reached. *See* G.S. 15A-1443(a). We observe the Accommodation Syndrome testimony related only to Ms. B. Excluding this inadmissible evidence, the jury's verdict was supported by the testimony of Ms. B, several witnesses who corroborated her account of the events, as well as medical and physical evidence of sexual abuse.

## VI.

[6] Defendant also alleges the trial court erred by not permitting him to cross-examine Dr. Gravatt, the State's expert, with regards to defendant's exhibits 1 and 2. These exhibits were records of physical examinations of Ms. B conducted at ages five and nine; Dr. Gravatt did not review these records in formulating her opinion regarding sexual abuse. Defendant argues that since the information contained in these records could have had some bearing upon Dr. Gravatt's opinion, she should have been allowed to review this evidence and then explain how it would affect her opinion. We are not persuaded by defendant's argument.

N.C.R. Evid. 703 provides that the facts or data upon which an expert bases her opinion may be those (1) perceived by the witness or (2) made known to her at or before the hearing. The expert's opinion may even be based upon facts not otherwise admissible in evidence, provided the facts so considered are of the type reasonably relied upon by similar experts in forming opinions on the subject. *State v. Allen*, 322 N.C. 176, 184, 367 S.E.2d 626, 630 (1988).

N.C.R. Evid. 705 mandates that the expert must disclose *the underlying facts or data which form the basis of her opinion* on cross-examination if so requested. Wide latitude is generally given to a cross-examiner in his attempts to discredit the expert witness, including questioning the expert in order to show that the facts

or data forming the basis of the expert's opinion were incomplete. *See* 2 Gard, *Jones on Evidence* § 14:30 (1972).

McCormick, in his treatise on evidence, delineates the proper scope of cross-examination of an expert witness:

> On cross-examination . . . opposing counsel may require the expert to disclose the facts, data, and opinions underlying the expert's opinion not previously disclosed. With respect to facts, data, or opinions forming the basis of the expert's opinion, disclosed on direct examination or during cross-examination, the cross-examiner may explore whether, and if so how, the non-existence of any fact, data, or opinion or the existence of a contrary version of the fact, data, or opinion supported by the evidence, would affect the expert's opinion. Similarly the expert may be cross-examined with respect to material *reviewed by the expert* but upon which the expert does not rely. Counsel is also permitted to test the knowledge, experience, and fairness of the expert by inquiring as to what changes of conditions would affect his opinion, and in conducting such an inquiry . . . the cross-examiner is not limited to facts finding support in the record. *It is, however, improper to inquire of the expert whether his opinion differs from another expert's opinion, not expressed in a learned treatise, if the other expert's opinion has not itself been admitted in evidence.* An expert witness may, of course, be impeached with a learned treatise, admissible as substantive evidence under Fed.R.Evid. 803(18). A hypothetical question may be employed upon cross-examination in the court's discretion.

McCormick, *McCormick on Evidence* § 13 (1992) (emphasis added).

In accordance with the aforementioned principles, the trial court properly allowed Dr. Gravatt to testify that she had learned of Ms. B's prior medical treatment at the Buncombe County Health Department; that she had never examined the records therefrom; and that in formulating similar opinions regarding other child patients, she often relied upon medical reports of other health care providers. In addition, on cross-examination defendant was permitted to elicit the following concessions from Dr. Gravatt:

> Q. I'll ask if the giving of a physical exam of a child approximately two years after she has allegedly had sexual abuse

STATE v. BLACK

[111 N.C. App. 284 (1993)]

would assist you in reaching your opinion as to whether such a child was sexually abused?

. . . .

A. Yes . . . .

Q. I'll ask if . . . at the time when [Ms. B] would have been nine years and ten months old, a physical examination and other medical investigation of this child would assist you in your confirming of your opinion or weakening of your opinion?

. . . .

A. It may.

. . . .

Q. If you were aware that from age three to age fifteen or so [Ms. B] had been seen by other health professionals and questioned about behavioral changes or difficulties and examined physically, that you would want to review that prior to giving an opinion as a scientific expert regarding her sexual abuse and the length of time it went on?

. . . .

A. Yes.

. . . .

Q. I'll ask you if by age nine years ten months you were to learn that [Ms. B] was asked about . . . behavioral changes . . . would that assist you in reaching your opinion as to whether or not she had been abused around [the] age of nine years and ten months?

. . . .

A. Yes . . . .

Defendant, however, desired to do more than cross-examine the State's expert concerning the facts and data upon which her opinion was based, or to utilize counter-hypotheticals to point out overlooked sources of information. Contrary to Professor McCormick's rules, defendant sought to question her with regard to *the contents of data which the expert had never before contemplated nor used in any way to formulate her opinion, and which*

*also was not contained in any recognized learned treatise.* Defendant cites no authority in support of such a procedure, and we decline to countenance it.

Moreover, there exists authority contrary to defendant's position. The Fifth Circuit Court of Appeals has consistently held an expert may not be examined concerning information contained in documents not used in formulating the expert's opinion. *Bobb v. Modern Products, Inc.,* 648 F.2d 1051, 1055-56 (5th Cir. 1981) (error to permit cross-examination of an expert by use of a particular report unless defendant established that the expert had relied on the report); *Bryan v. John Bean Division of FMC Corp.,* 566 F.2d 541, 545-47 (5th Cir. 1978) (error to allow cross-examination of expert by reading from reports of two non-testifying experts since the examination constituted the "hearsay opinion of an expert not subject to cross-examination"). *See also Box v. Swindle,* 306 F.2d 882, 886-87 (5th Cir. 1962).

Finally, we observe that although defendant subsequently introduced these exhibits during presentation of his evidence and although the record reflects at least one of the health care providers involved in the preparation of the reports was still employed by the local Health Department, defendant did not call an expert witness of his own. Such a witness could have testified regarding the contents of the reports or the implications thereof to any current diagnosis of sexual abuse, and indeed could have offered an opinion contrary to that of the State's expert. Defendant, however, failed to present any such expert testimony.

Based on the foregoing, we hold the trial court did not err in refusing to allow defendant to utilize Ms. B's prior medical records in cross-examination of the State's expert witness.

## VII.

[7] In his next assignment of error, defendant maintains the trial court erred by denying his motion to dismiss the charges of second degree rape as to each victim. He insists the State failed to present sufficient evidence of "force," specifically of "constructive force," necessary to sustain a conviction under N.C.G.S. § 14-27.3. We disagree.

Upon review of a defendant's motion to dismiss for insufficient evidence, the evidence must be taken in the light most favorable to the State, and the State is entitled to every reasonable inference

to be drawn therefrom. *State v. Bates*, 313 N.C. 580, 581, 330 S.E.2d 200, 201 (1985). A person may be convicted of second degree rape where he engages in vaginal intercourse with another person "[b]y force and against the will of the other person." G.S. § 14-27.3(a)(1). The requisite force may be either *actual*, or *constructive* in nature. *State v. Etheridge*, 319 N.C. 34, 45, 352 S.E.2d 673, 680 (1987). Constructive force is demonstrated where there are threats or other actions on the part of the defendant which compel the victim's submission to vaginal intercourse. *Id.*

According to defendant, constructive force is present only where there is evidence that the threats or displays of force were made for *the specific purpose of compelling the victim's submission to sexual intercourse*. In sum, he argues that the State must prove some "nexus" between these prior acts of violence and the victim's "meek submission" to sexual acts. Defendant's argument might have merit if *State v. Alston*, 310 N.C. 399, 312 S.E.2d 470 (1984), governed this case.

In *Alston*, it was held "absent evidence that the defendant used force or threats to overcome the will of the victim *to resist the sexual intercourse alleged to have been rape*, . . . general fear was not sufficient to show that the defendant used the force required to support a conviction of rape." *Id.* at 409, 312 S.E.2d at 476. However, our Supreme Court, observing that "[s]exual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse," *State v. Etheridge*, 319 N.C. at 47, 352 S.E.2d at 681, has since determined that the *Alston* "general fear" rationale is inapplicable to an intrafamilial sexual abuse case involving children. In these situations, constructive force may be inferred from *circumstances surrounding the parent-child relationship* which indicate that the child acquiesced rather than risk the parent's wrath. *Id.* at 47-48, 352 S.E.2d at 681-82. "The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *State v. Etheridge*, 319 N.C. at 47, 352 S.E.2d at 681. Under these conditions, "the parent wields authority as another assailant might wield a weapon. The authority itself intimidates; the implicit threat to exercise it coerces." *Id.* at 48, 352 S.E.2d at 682.

Moreover, while *Etheridge* dealt with a parent and a natural child, this Court has applied the constructive force doctrine enunciated therein to a circumstance where defendant was the live-in boyfriend of the victim's mother and participated in a simulated parent-child relationship. *State v. Morrison*, 94 N.C. App. 517, 522-23, 380 S.E.2d 608, 611-12, *disc. review denied*, 325 N.C. 549, 385 S.E.2d 507 (1989). Similarly, in the present case, defendant and the victims lived in the same household and in a parent-child relationship for several years.

In ruling on the sufficiency of the evidence of constructive force in *Etheridge*, the Supreme Court noted that in the incident charged defendant merely said "do it anyway" when his son initially refused to disrobe. *State v. Etheridge*, 319 N.C. at 48, 352 S.E.2d at 681. However, because abuse of the victim began at age eight and all such incidents occurred while the child lived as an unemancipated minor in his father's household, subject to parental authority and threats of discipline, "the state presented sufficient evidence from which the jury could reasonably infer that defendant used his position of power to force his son's participation in sexual acts." *Id.* at 48, 352 S.E.2d at 682.

In the case *sub judice*, defendant allegedly began abusing both step-daughters at an early age, and both testified they were afraid of defendant. Ms. B further testified defendant told her he would kill anyone who tried to have him sent to prison. According to Ms. B, during the summer of 1989 defendant "got" her from the swimming pool, "took" her back to the house, "told" her to go into either his room or the basement, and "told" her to take her clothes off and to lay down, at which time he had sexual intercourse with her. During this incident Ms. B complained "that hurts", and defendant placed his hand over her mouth and said "[t]ake it like a woman." She also testified that once when she was "little" she threatened "to tell" and defendant hit her. Ms. B stated defendant was "frightening," that "he was supposed to be my father," and explained she did not confide in a school worker "[b]ecause I was scared he was going to hurt me."

Ms. T testified as to several incidents of sexual abuse, beginning around age six. On one occasion in June of 1987, defendant locked the doors to the house, "told" Ms. T to take off her clothes and then had sexual intercourse with her. After concluding, he "told" her to unlock the door. Ms. T stated she complied with

STATE v. BLACK

[111 N.C. App. 284 (1993)]

defendant's requests because she was "scared" and "[b]ecause he was so mean. He was crazy." According to Ms. T, defendant was prone to throwing violent fits. Further, when she revealed defendant's actions to her mother, he yelled at her and "made" her say she had lied.

The foregoing circumstances are indicative of the victims' rational fear of their step-father. Based on this fear combined with defendant's authoritative position as a step-parent, a jury could "reasonably infer that defendant used his position of power," to force his step-daughters' participation in the sexual acts — thereby satisfying the element of "constructive force." *State v. Etheridge*, 319 N.C. at 48, 352 S.E.2d at 682. Accordingly, the trial court did not err by denying defendant's motion to dismiss the charges of second degree rape.

## VIII.

[8] Lastly, defendant contends the trial court erred by instructing the jury on the element of force needed to support the charges of second degree rape. This argument is without merit.

The trial court instructed:

The force necessary to constitute rape need not be actual physical force. Fear or coercion may take the place of physical force. And by force and against her will can include constructive force in the form of fear, fright or coercion. You may find that the youth and vulnerability of children, coupled with the power inherent in a parent's position of authority creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the defendant's purpose.

Contrary to defendant's assertion, this instruction does *not* mandate that *all instances* of sexual intercourse between parent and child will constitute "rape." *First*, the instruction indicates the jury "*may* find" the existence of constructive force in intrafamilial situations. *Second*, the jury was also properly instructed that they could not find defendant guilty of rape *unless* they *also* found (1) the victims did not consent *and* (2) the sexual intercourse was against the victims' will. Further, as we have indicated in discussing defendant's previous assignment of error, the trial court's instruction on constructive force accurately reflected existing North Carolina

law and was supported by the evidence presented. *See* discussion of *State v. Etheridge* and *State v. Morrison, supra.*

Having fully examined each of defendant's arguments, we find no prejudicial error.

No error.

Judges EAGLES and ORR concur.