**STATE v. LYNCH**

[217 N.C. App. 455 (2011)]

STATE OF NORTH CAROLINA v. TRAVIS LYNCH

No. COA11-801

(Filed 20 December 2011)

**Evidence—victim's prior convictions—admissible**

The trial court erred in a prosecution for robbery and kidnapping by denying the introduction of a defense exhibit consisting of the victim's criminal records where the victim's testimony was critical, he had minimized the number and severity of his past convictions, and defendant sought to present only evidence of the victim's convictions and did not inquire into the details of the crimes.

Judge BRYANT dissenting.

Appeal by defendant from judgments entered 3 February 2011 by Judge Allen Baddour in Superior Court, Chatham County. Heard in the Court of Appeals 30 November 2011.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kimberley A. D'Arruda, for the State.*

*Robert H. Hale, Jr. & Associates, by Daniel M. Blau, for defendant-appellant.*

STROUD, Judge.

Travis Lynch ("defendant") appeals from a conviction for robbery with a dangerous weapon and second-degree kidnapping. For the following reasons, we grant defendant a new trial.

## I. Background

On 16 November 2009, defendant was indicted on one count of robbery with a dangerous weapon and one count of second-degree kidnapping. Defendant was tried on these charges at the 31 January 2011 Criminal Session of Superior Court, Chatham County. The State's evidence presented at trial tended to show that on 18 June 2009, defendant was driving Michael Nicholas "Nick" White, Rashad Farrar, and Rashad's sister, Tiffany Farrar, to Siler City, North Carolina when Nick and Rashad began talking about robbing James Tinnin, who owned a clothing store in Liberty, North Carolina and also sold clothes and shoes from his van. Defendant told Nick to get a gun and, after the robbery, they would go back to defendant's apartment.

Rashad called Mr. Tinnin to tell him that he wanted to buy some clothes from him. Defendant then dropped Rashad and Tiffany off at a barber shop in Siler City to meet Mr. Tinnin. Mr. Tinnin arrived at the barber shop in his van and Rashad purchased some shoes from him. Tiffany told Mr. Tinnin that a guy she knew wanted to buy some clothes from him, but Mr. Tinnin would have to drive them to his house, which was only five minutes away. Mr. Tinnin, following directions from Rashad and Tiffany, drove twenty minutes to a house located down a dirt driveway. Defendant was at the house sitting on the porch. Mr. Tinnin parked the van, went up to meet defendant, and asked defendant his clothing sizes. As Mr. Tinnin began searching in the back of his van for clothes, defendant grabbed Mr. Tinnin from behind and pulled him away from his van. Mr. Tinnin then noticed Nick coming around from the side of the house pointing a rifle at Mr. Tinnin's head. Defendant dragged Mr. Tinnin beside the house, while Nick continued pointing the rifle at Mr. Tinnin. Defendant then threw Mr. Tinnin on the ground and told him to stay down. Nick and Rashad then began taking clothes out of Mr. Tinnin's van and putting them in the trunk of defendant's car, which was parked at a neighboring house.

After about five minutes, Mr. Tinnin noticed that the man holding the rifle had walked off so he walked back around the house and saw all four individuals "taking stuff out of the van." Mr. Tinnin yelled at them to stop and defendant, Tiffany, and Rashad ran away with items from the van in their arms. Nick then turned around and pointed the gun back at Mr. Tinnin. Mr. Tinnin ran back down the driveway towards the highway and called 911. As he was in the road talking to the 911 operator, he saw Tiffany and Rashad leave in a car from the neighboring house. Defendant, Rashad, Nick, and Tiffany then went back to defendant's apartment and later divided up the items taken from Mr. Tinnin's van. Mr. Tinnin testified that he did not have a gun on his person or in the van. Tiffany Farrar later gave a statement to the sheriff's office regarding the events that occurred, stating that defendant was a participant in the kidnapping and robbery of Mr. Tinnin.

Defendant testified that when Mr. Tinnin, Rashad, and Tiffany arrived in Mr. Tinnin's van, he was sitting on the porch talking on his cell phone to his girlfriend. Mr. Tinnin, Rashad, and Tiffany exited the van and began arguing. When defendant approached the van to see what the argument was about, Mr. Tinnin reached in his van for a gun. Defendant grabbed Mr. Tinnin and pulled him away from the van to keep him from the weapon. Defendant testified that he then let Mr. Tinnin go and he, Rashad, Nick, and Tiffany ran through the woods to

STATE v. LYNCH

[217 N.C. App. 455 (2011)]

his car and left the scene, as he was afraid for his safety. Defendant denied having a conversation with Nick or Rashad about robbing Mr. Tinnin; trying to kidnap or rob Mr. Tinnin; seeing Nick point a gun at Mr. Tinnin; or taking anything from Mr. Tinnin's van.

On 3 February 2011, a jury found defendant guilty of both charges. The trial court sentenced defendant to a term of 51 to 71 months imprisonment for the robbery with a dangerous weapon conviction and a consecutive term of 20 to 33 months imprisonment for the second-degree kidnapping conviction. Defendant gave oral notice of appeal in open court and on 7 February 2011 filed written notice of appeal from the 3 February 2011 convictions. On appeal, defendant contends that he should get a new trial because (1) the trial court violated his constitutional rights to a unanimous jury verdict as to the second-degree kidnapping charge; (2) his trial counsel did not provide him with effective assistance of counsel; (3) the trial court erred by giving an instruction as to aiding and abetting; (4) the trial court erred in not giving an instruction as to self-defense with respect to the charge of second-degree kidnapping; (5) the trial court committed prejudicial error by refusing to admit certified copies of the victim/witness's criminal records for impeachment of credibility purposes; and (6) the trial court committed plain error and prejudicial error by admitting irrelevant and prejudicial images from a magazine into evidence. We find issue five dispositive.

## II. Mr. Tinnin's Criminal Record

Defendant contends that "the trial court erred by refusing to admit certified true copies of Mr. Tinnin's criminal records, where the records were critical to impeach Mr. Tinnin's credibility and Rule 609(a) required the trial court to admit the records." Defendant argues that Rule 609(a) "permitted defense counsel to impeach Mr. Tinnin by admitting certified true public records of his prior convictions without calling any additional witnesses[;]" the trial court "erred by refusing to admit Defendant's Exhibit 1" which contained copies of Mr. Tinnin's prior convictions; and this error was prejudicial to defendant as he was not permitted to show that Mr. Tinnin, the alleged victim and the State's "most important witness[,]" "had misrepresented his [prior criminal] record to the jury[;]" and had this exhibit been admitted, "there is a reasonable possibility that the jury would have reached a different verdict." The State, citing *State v. Bell*, 338 N.C. 363, 383, 450 S.E.2d 710, 720 (1994), *cert. denied*, 515 U.S. 1163, 132 L. Ed. 2d 861 (1995), counters that "[i]t is not necessary for this Court to decide if there was any error in this case, because any error com-

mitted by the trial court in not allowing the introduction of a certified copy of Mr. Tinnin's criminal record at trial was not prejudicial[,]" because Mr. Tinnin had testified as to his prior convictions and this evidence "allowed the jury to evaluate Mr. Tinnin's credibility and there was no reasonable possibility that a different result would have been reached."

N.C. Gen. Stat. § 8C-1, Rule 609(a) (2009) "Impeachment by evidence of conviction of crime" states that

> [f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted if elicited from the witness or established by public record during cross-examination or thereafter.[1]

Our Supreme Court has held that the admission of evidence pursuant to Rule 609(a) is not in the discretion of the trial court as

> [t]he language of Rule 609(a) ("shall be admitted") is mandatory, leaving no room for the trial court's discretion. Moreover, while N.C. R. Evid. 609(b) requires a balancing test of the probative value and prejudicial effect of a conviction more than ten years old, this provision is explicitly absent from 609(a). Indeed, the official comments to Rule 609(a) reveal an unequivocal intention to diverge from the federal requirement of a balancing test. N.C.G.S. § 8C-1, Rule 609 official commentary, para. 4 ("Subdivision (a) also deletes the requirement in Fed. R. Evid. 609(a) that the court determine that the probative value of admitting evidence of the prior conviction outweighs its prejudicial effect to the defendant.").

*State v. Brown*, 357 N.C. 382, 390, 584 S.E.2d 278, 283 (2003), *cert. denied*, 540 U.S. 1194, 158 L.Ed. 2d 106 (2004).

The record shows that defense counsel asked Mr. Tinnin questions during cross examination regarding his prior criminal record. At the close of defendant's case, defense counsel requested to admit defendant's exhibit 1, which consisted of three prior judgments and a misdemeanor conviction record showing Mr. Tinnin's prior convictions in 2003, 2006, and 2010 in Guilford and Randolph Counties. Defense counsel stated that Mr. Tinnin's testimony regarding his prior

---

1. The ten year time limit in N.C. Gen. Stat. § 8C-1, Rule 609(b) is not applicable because the oldest prior conviction in defendant's exhibit 1 was from 2003.

convictions "was not quite accurate or candid . . . [and] the jury should have a right to know the full—the full scope of those convictions." Without discussion, the trial court denied defense counsel's request. The record shows that all four documents contained in defendant's exhibit 1 were certified as true copies of the original documents by the Superior Court Clerks in Guilford and Randolph Counties. The judgments and misdemeanor conviction record contained in defendant's exhibit 1 show prior convictions for twelve felonies and two misdemeanors. As defense counsel was requesting the introduction of the certified "public record[s]" showing Mr. Tinnin's prior convictions "for the purpose of attacking the credibility of a witness," *see* N.C. Gen. Stat. § 8C-1, Rule 609(a), and the language of Rule 609(a) "is mandatory," *see Brown*, 357 N.C. at 390, 584 S.E.2d at 283, the trial court erred in denying defense counsel's request to allow defendant's exhibit 1 into evidence.

We have stated that "[e]ven where the trial court improperly excludes certain evidence, . . . a defendant is not entitled to a new trial unless he can establish prejudice as the result of this error." *State v. Black*, 111 N.C. App. 284, 290, 432 S.E.2d 710, 715 (1993) (citation and quotation marks omitted). The test for prejudicial error is whether

there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

N.C. Gen. Stat. § 15A 1443(a)(2009).

Defendant testified that he did not participate in any kidnapping or robbery of Mr. Tinnin and, in fact, defendant grabbed Mr. Tinnin because Mr. Tinnin was reaching for a weapon. The only two witnesses who gave statements to the sheriff's office and testified that defendant was a participant in the kidnapping and robbery of Mr. Tinnin were Mr. Tinnin and Tiffany Farrar. However, Tiffany Farrar also admitted that on the morning of 18 June 2009 she had twice snorted at least a gram of cocaine; that she was under the influence of cocaine the whole day; that she could not remember exactly what was said that day because she was under the influence of cocaine; that she frequently used cocaine and was probably under the influence of cocaine when she gave her statement to the sheriff's office;

that several parts of her trial testimony were not included in her statement to the sheriff's office; and that she was testifying in hopes of receiving probation or a lesser sentence for her own involvement in the events that occurred on 18 June 2009. Thus, Mr. Tinnin's testimony and his credibility were crucial to the State's argument that defendant participated in the kidnapping and robbery of Mr. Tinnin. But there are several discrepancies in Mr. Tinnin's testimony regarding his prior convictions and his prior convictions shown in the certified documents contained in defendant's exhibit 1.

As noted above, on cross-examination, Mr. Tinnin was questioned by defense counsel regarding his prior convictions in 2003, 2006, and 2010. Mr. Tinnin admitted that in 2003 he had been convicted of trafficking cocaine, but claimed that a 2003 conviction for maintaining a dwelling/vehicle for controlled substance in Guilford County was actually the same as his conviction for trafficking. Mr. Tinnin admitted to two 2006 convictions for trafficking in cocaine by possession and a 2006 conviction for PWISD marijuana; denied 2006 convictions for maintaining a dwelling place for controlled substances, felony possession of cocaine, and possession of marijuana; and stated that he did not remember if he had been convicted in 2006 for PWISD cocaine or two counts of felony counterfeit trademark. Mr. Tinnin admitted that he had been convicted in 2010 of misdemeanor use of a counterfeit trademark.[2] In contrast, the certified copies of the judgments and misdemeanor conviction record contained in defendant's exhibit 1 showed that Mr. Tinnin had the following prior convictions: (1) in 2003, a conviction for trafficking by manufacture 200-400 grams of cocaine and maintaining a vehicle/dwelling place for controlled substance; (2) in 2006, in two separate judgments, convictions for two counts of felony criminal use of a counterfeit trademark, two counts of trafficking in cocaine by possession, two counts of maintaining a dwelling place to keep a controlled substance, two counts of PWISD marijuana, one count of PWISD of cocaine, one count of felony possession cocaine, and one count of misdemeanor possession of marijuana up to ½ oz; and (3) in 2010, one conviction for misdemeanor criminal use of a counterfeit trademark. Although Mr. Tinnin's testimony as to his 2010 conviction was accurate, his testimony did not accurately represent his 2006 and 2003 prior convictions. Mr. Tinnin only admitted to four of his twelve prior felony convictions

---

2. A conviction for misdemeanor criminal use of a counterfeit trademark pursuant to N.C. Gen. Stat. § 80-11.1(b)(1) (2009) is a class 2 misdemeanor and would be admissible pursuant to N.C. Gen. Stat. § 8C-1, Rule 609(a).

and one of his two misdemeanor convictions. The trial court's denial of defense counsel's motion to allow into evidence defendant's exhibit 1 prevented defense counsel from drawing into question Mr. Tinnin's credibility by showing that he had misrepresented to the jury his prior criminal record by greatly minimizing the number and severity of his prior convictions. Although most of the prior convictions were drug related crimes, Mr. Tinnin testified that he could not remember if he had been convicted in 2006 of two counts of felony criminal use of a counterfeit trademark. But defendant's exhibit 1 shows that he was twice convicted of this crime in 2006 in Guilford County and again in 2010 he pled guilty to the misdemeanor criminal use of a counterfeit trademark in Randolph County. Unlike the drug offenses, the crimes involving the use of a counterfeit trademark show a pattern of deception and dishonesty which is especially relevant to defendant's attempt to attack Mr. Tinnin's credibility. Defendant's exhibit 1 further erodes Mr. Tinnin's credibility because it shows fourteen prior convictions, over twice as many as he acknowledged in his testimony. In contrast, defendant testified that he had never been convicted of anything more than a traffic offense and his prior record level worksheet shows no prior convictions. Given the impeachment of Tiffany Farrar's testimony and the critical nature of Mr. Tinnin's testimony, "there [was] a reasonable possibility that" the jury would have reached a different result had defendant's exhibit 1 been admitted. *See* N.C. Gen. Stat. § 15A 1443(a).

The State cites *State v. Bell* in support of its argument that defendant was not prejudiced by the exclusion of Mr. Tinnin's prior convictions, but we find *State v. Bell*, 338 N.C. 363, 450 S.E.2d 710, distinguishable from the case before us. In response to the defendant's contention that the trial court erred in refusing "to allow questioning of . . . the State's key witness, regarding his prior convictions and several prior acts of misconduct allegedly committed by him[,]" the Court in *Bell* held as to the witness's prior convictions that "the trial court properly restricted defendant's questioning of [the State's key witness] on his prior convictions for breaking and entering and larceny to the time and place of the convictions and the penalties imposed thereon." *Id.* at 381-82, 450 S.E.2d at 720. The defendant in *Bell* was restricted as to the *nature* of his questioning regarding prior convictions, not whether he *could* impeach the witness regarding his prior convictions pursuant to Rule 609(a). Here, the defendant sought to present only evidence as to Mr. Tinnin's convictions and the time and place of these convictions, and not to inquire into the details of

these crimes. The other incidents which the defendant sought to question the witness about in *Bell* were not prior convictions but some "particular alleged specific act[s] of misconduct[,]" pursuant to N.C. Gen. Stat. § 8C-1, Rule 608(b), which is not at issue in this case. *Id.* at 382-83, 450 S.E.2d at 720-21. In addition, although the *Bell* court found that the trial court erred by excluding evidence of one act of misconduct which was relevant to the "veracity of the witness[,]" the exclusion of this one incident of "misrepresentation[]" was not prejudicial because the evidence of the State's key witness's prior convictions was "sufficient evidence to evaluate [the witness's] credibility, including proof of bias." *Id.* at 383, 450 S.E.2d at 721. Here, the jury did not have sufficient or accurate evidence as to the number and severity of Mr. Tinnin's prior convictions. Instead of supporting the State's argument that defendant was not prejudiced by the exclusion of Mr. Tinnin's prior criminal record, *Bell* tends to support defendant's argument that he was prejudiced.

Because defendant was prejudiced by the trial court's error in denying the introduction of defendant's exhibit 1 into evidence, we grant defendant a new trial. As we have granted defendant the relief he requested, we need not address the other issues raised in his appeal.

NEW TRIAL.

Judge CALABRIA concurs.

Judge BYRANT dissents in a separate opinion.

Judge Bryant, dissenting.

The majority grants defendant a new trial by finding prejudice in the trial court's denial of a defense exhibit containing a witness's record of convictions. Because the record does not contain evidence that would establish prejudicial error, I respectfully dissent.

First, assuming it was error for the trial court to deny, pursuant to N.C.G.S. § 8C-1, Rule 609(a), defendant's request to admit certified public records of Mr. Tinnin's prior convictions, that error was not prejudicial.

It is well established that

[e]ven where the trial court improperly excludes certain evidence, moreover, a defendant is not entitled to a new trial unless he can establish prejudice as the result of this error. The test for

prejudicial error is whether a different result would have been reached if the error had not been committed.

*State v. Black*, 111 N.C. App. 284, 290, 432 S.E.2d 710, 715 (1993) (citations omitted).

The majority contends that "the jury did not have sufficient or accurate evidence as to the number and severity of Mr. Tinnin's prior convictions," and therefore, defendant was prejudiced such that defendant should be granted a new trial. I disagree with the majority's reasoning and the result they reach.

Defendant was charged and convicted by a jury of robbery with a dangerous weapon and second-degree kidnapping. Mr. Tinnin was the prosecuting witness for the state and the victim of the crimes for which defendant was charged. On the witness stand under cross-examination by defendant, Mr. Tinnin admitted to his prior convictions of maintaining a dwelling/vehicle for the use of controlled substances; trafficking in cocaine by manufacturing; trafficking in cocaine by possession; possession with intent to sell or deliver marijuana; and, misdemeanor use of a counterfeit trademark. However, defendant did not attempt to impeach Mr. Tinnin directly during his cross examination. Instead, after defendant had rested his case, defendant was allowed to mark the exhibit for identification, then attempted to have it admitted.

Defendant's Exhibit 1 includes *four documents* certified as true copies of Mr. Tinnin's criminal record. These four documents represent four judgments dated 20 May 2003, 11 September 2006, 12 September 2006, and 11 March 2010. These four judgments represent twelve to thirteen felonies[1] and two misdemeanors. Mr. Tinnin plead guilty to all of the offenses, including guilty pleas to a total of ten felonies and one misdemeanor on two consecutive days. All of these offenses can be placed in three basic categories: possession of drugs (cocaine and marijuana); maintaining a car or dwelling for use of controlled substances; and use of a counterfeit trademark. The majority opinion strongly emphasizes what it sees as prejudice because the "jury did not have sufficient or accurate evidence as to the number and severity of Mr. Tinnin's prior convictions." However, on the wit-

1. The criminal records in Defendant's Exhibit 1 are confusing. In addition to the four judgments noted by the majority and in this dissent, a separate page of the exhibit indicates a felony trafficking in cocaine offense, which offense may or may not represent a conviction. Therefore, it is difficult to tell whether defendant was convicted of twelve or thirteen felonies; perhaps that was the reason defendant did not impeach Mr. Tinnin with the record during Mr. Tinnin's testimony on cross examination.

ness stand, under cross examination, Mr. Tinnin admitted to three *types* of convictions represented by the four judgments; he simply did not admit to each of the fourteen or fifteen individual convictions. Further, based on Mr. Tinnin's responses to questions on cross examination, it is likely that, had defendant attempted to use the exhibit to impeach Mr. Tinnin's credibility during cross examination rather than simply attempting to admit it later, Mr. Tinnin might have admitted all the convictions. At the very least Mr. Tinnin would have had an opportunity to see that the record in Exhibit 1 contained not only the fact that four judgments were entered on four different dates, but that each judgment contained multiple convictions.

Even if one views Mr. Tinnin's testimony as the only critical testimony at trial, the record cannot support a determination that Mr. Tinnin's credibility would have been impeached to the point of total erosion by admission of the exhibit. There is no reasonable possibility that the jury, which apparently believed Mr. Tinnin notwithstanding his criminal record of drug possession, drug trafficking, maintaining a vehicle/residence for drugs, and use of a counterfeit trademark, would not have believed him had they known that he had plead guilty to additional crimes of the same type as he admitted at trial.

However, Mr. Tinnin's testimony was not the only critical testimony. While Mr. Tinnin was the chief prosecuting witness and the victim of the crimes charged against defendant, Mr. Tinnin's testimony was only a portion of the evidence before the jury. Prior to Mr. Tinnin's testimony the jury heard from two law enforcement officers from the Chatham County Sheriff's Office—Patrol Sergeant Brian Phillips and Detective Sergeant David Green, who responded to Mr. Tinnin's 911 call for assistance, reporting he had been robbed. Those officers testified at trial to Mr. Tinnin's demeanor as Mr. Tinnin described what he had just experienced—very nervous, agitated, incredulous (like he couldn't believe this had happened to him). They also testified to their observations at the crime scene: Mr. Tinnin's van facing the front of the house; rear hatch door open; sliding door open; lots of boxes, clothes, DVDs, CDs, etc. visible through the open doors. In addition to the officers' testimony of their observations of Mr. Tinnin shortly after the crime occurred, the jury also heard the statement Mr. Tinnin gave to Patrol Sergeant Phillips while at the scene, a statement consistent with Mr. Tinnin's trial testimony.

For these reasons I believe the majority's opinion that the trial court erred and prejudice occurred in the denial of the introduction of Defendant's Exhibit 1 is not supported by this record. Further, the

majority holds that the instant case is distinguishable from *State v. Bell*, 338 N.C. 363, 450 S.E.2d 710 (1994), because *Bell* held that the trial court properly restricted the defendant's impeachment of a witness by prior convictions under 608(a) but erred in restricting defendant's impeachment by specific instances of conduct under 608(b). However, where the error is not constitutional, the test for improper exclusion of evidence is the prejudicial error test: whether "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . ." *Bell*, 338 N.C. at 383, 450 S.E.2d at 721 (citing N.C.G.S. § 15A-1443(a)). See also *Black*, 111 N.C. App. at 293, 432 S.E.2d at 710.

For the foregoing reasons, I respectfully dissent.