STATE OF NORTH CAROLINA v. ARTHUR MONROE STALLINGS

No. 9118SC29

(Filed 18 August 1992)

1. **Indictment, Information, and Criminal Pleadings § 42 (NCI4th) — oral statements of prosecutor — not bill of particulars — no fatal variance — evidence not outside bill of particulars**

     There was no bill of particulars in a sexual offense case because statements made by the prosecutor during a hearing on defendant's motion for a bill of particulars did not constitute a bill of particulars and the trial court denied the motion. Therefore, there was no merit to defendant's contention that there was a fatal variance between the court's charge and the bill of particulars and that evidence of cunnilingus was inadmissible as outside the scope of the bill of particulars.

     **Am Jur 2d, Indictments and Informations § 170.**

2. **Indictment, Information, and Criminal Pleadings § 43 (NCI4th) — denial of bill of particulars**

     The trial court did not err in the denial of defendant's motion for a bill of particulars in a sexual offense case where there was no showing that lack of the information requested by defendant impaired his defense.

     **Am Jur 2d, Indictments and Informations §§ 159-162.**

     **Right of accused to bill of particulars. 5 ALR2d 444.**

3. **Evidence and Witnesses § 2142 (NCI4th) — lay witness — consistency of victim's statements**

     Testimony by a child victim advocate that a child rape and sexual offense victim had never told her anything different from what she told on the witness stand was admissible on the issue of the victim's credibility and to corroborate the victim's testimony where the witness first testified about the statements the victim had made to her prior to trial.

     **Am Jur 2d, Rape § 68.**

STATE v. STALLINGS

[107 N.C. App. 241 (1992)]

4. **Evidence and Witnesses § 2341 (NCI4th) — child sexual abuse accommodation syndrome — admission for substantive purposes — harmless error**

   The trial court erred in permitting a pediatrician to testify that a rape and sexual offense victim was suffering from child sexual abuse accommodation syndrome without limiting the jury's consideration of such testimony to corroborative purposes. However, the admission of this testimony for substantive purposes was not prejudicial error in light of the overwhelming evidence of defendant's guilt, including medical and physical evidence of penetration and testimony of four witnesses in addition to that of the victim.

   **Am Jur 2d, Appeal and Error §§ 778, 786; Rape § 68.**

5. **Constitutional Law § 374 (NCI4th) — first degree sexual offense — life sentence — not cruel and unusual punishment**

   A life sentence for first degree sexual offense is not cruel and unusual punishment.

   **Am Jur 2d, Criminal Law § 604.**

   **Length of sentence as violation of constitutional provisions prohibiting cruel and unusual punishment. 33 ALR3d 335.**

APPEAL by defendant from Judgments entered by *Judge James M. Long* on 22 August 1990 in GUILFORD County Superior Court. Heard in the Court of Appeals 8 October 1991.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant appellant.*

COZORT, Judge.

Defendant was indicted initially on 19 February 1990 for first-degree sexual offense. On 23 March 1990 defendant moved for a bill of particulars. On 21 May 1990 a superceding indictment charged defendant with first-degree sexual offense and first-degree rape. A jury found defendant guilty of both charges and the trial court sentenced him to life imprisonment. Defendant appeals the judgment. We find no error.

STATE v. STALLINGS

[107 N.C. App. 241 (1992)]

The State introduced the following evidence: In 1989, the victim was a ten-year-old girl living with her mother, her stepfather, and two siblings. One Friday in December 1989 the victim and her mother were watching a television program involving sex abuse which prompted the victim to tell her mother that "Pop's been messing with me—doing things that married men and women do." Mrs. Stallings called Gwen Burns at the Department of Social Services. Ms. Burns told Mrs. Stallings not to "push the issue" and that she and Detective Patricia Neal would speak to the victim the following Monday. On Monday Ms. Burns and Detective Neal spoke to the victim at school about the alleged abuse. In the interview, the victim stated that defendant began sexually abusing her during the summer of 1989 and that she had not spoken about it because she was scared. Specifically, the victim testified at trial that sometime after school ended in May or June defendant took her into his room, shut and locked the door, and took off their clothes. The victim then described the act of sexual intercourse. She also stated that defendant had "licked her where she peed at." Afterwards, she returned to the living room to watch television, but did not tell anyone what happened because she was afraid and defendant told her that they would both be in trouble if she told anyone.

The victim also described another incident which occurred in Mebane in November 1989. She stated that while she and defendant were walking in the woods near her grandmother's house that he told her to sit beside him and then he stuck his finger in her "front part." She further stated that her mother had noticed blood on her panties. The victim's testimony was corroborated by several witnesses, including her mother, her grandmother, Detective Neal, and Kathy Kitchen, a victim's advocate.

Defendant introduced the following evidence: Defendant denied that he had taken the victim into the bedroom, shut and locked the door, and had sexual intercourse with her. He also denied assaulting the victim in the woods at her grandmother's house. According to defendant, his wife was unfaithful to him and angry with him because he had exposed her as a police informer. He further testified that on the morning of his arrest, his wife laughed and said, "Didn't I tell you I'd get you?" He stated that he had taken the victim in the bedroom during the time period in question, but for the sole purpose of spanking her for taking some of his art work to school and lying about it. A witness for the defense

testified that in his opinion the defendant was a truthful person, but Mrs. Stallings was not.

Defendant presents six issues on appeal: (1) whether the trial court erred in denying defendant's motion to dismiss; (2) whether the trial court erred in admitting evidence of cunnilingus; (3) whether the trial court erred in denying defendant's motion for a bill of particulars; (4) whether the trial court erred in allowing witness Kitchen to testify to the consistency in the victim's statements; (5) whether the trial court erred in allowing witness Sharpless to testify that the victim suffered from Child Sexual Abuse Accommodation Syndrome (CSAAS); and, (6) whether the trial court erred in entering judgment against defendant for first-degree sexual offense. Defendant has abandoned the remaining assignments of error pursuant to N.C.R. App. P. 28(b)(5).

[1] In his first assignment of error, defendant argues that the trial court erred in denying his motion to dismiss because (1) there was a fatal discrepancy between the bill of particulars and the charge, and (2) the evidence of cunnilingus was inadmissible as outside the scope of the bill of particulars. In his second assignment of error, defendant again asserts that the evidence of cunnilingus is inadmissible as outside the scope of the bill of particulars. We disagree.

On 19 February 1990 defendant was indicted for a first-degree sexual offense which allegedly occurred between 1 February and 28 February 1989. On 23 March 1990 defendant made a motion for a bill of particulars. On 21 May 1990 in a superceding indictment defendant was charged with first-degree sexual offense and first-degree rape occurring sometime between 31 May and 5 July 1989. At the hearing defendant argued that he was entitled to know the specific sex act constituting the first-degree sexual offense. Reviewing the 21 May 1990 indictment, the trial court noted the indictment was statutorily proper and consistent with case law. At that point, counsel for the State indicated that the location of the offense was in Guilford County at the child's home. In response to defendant's inquiry about the specific sex act, State's counsel responded:

> I think the Court is exactly right in what you've told him. He is not entitled to that. I'll check the victim's statement and try and be more specific. . . .

Your Honor, the victim referred to the use of his finger in her bottom part, and I would submit that is sufficient enough for defendant to go to trial.

The trial court then stated, "Now, the motion then will be — beyond the information supplied here in open court, Mr. Lind, is denied." The trial court entered a written order denying the motion. At trial defendant made a motion to dismiss at the close of State's evidence on the basis that there was insufficient evidence to support the elements of the alleged offenses. The trial court reviewed the earlier order denying the motion for a bill of particulars and ruled that

since there has been no specification of particulars of what sex act is involved, the Court will deny the motion to dismiss the first-degree sex offense and submit that theory, at least under the current evidence, cunnilingus, on a theory of cunnilingus, and will submit the first-degree rape issue on the theory of vaginal intercourse with a minor under 13 years of age.

N.C. Gen. Stat. § 15A-925(a)(b)(c) (1988) provides that, upon motion by defendant, the trial court may order the State to file a bill of particulars setting forth factual information relating to the charge but not contained in the pleading, if necessary for the defendant to adequately prepare or conduct his defense. N.C. Gen. Stat. § 15A-925(d) requires that "[t]he bill of particulars must be filed with the court and must recite every item of information required in the order. A copy must be served upon the defendant, or his attorney." The purpose of a bill of particulars is to put the defendant on notice of the specific charges and acts which are to be resolved at trial. *State v. Johnson*, 30 N.C. App. 376, 377, 226 S.E.2d 876, 878, *disc. review denied*, 291 N.C. 177, 229 S.E.2d 691 (1976). The defendant must show that the information requested is necessary to conduct the defense. *State v. Easterling*, 300 N.C. 594, 601, 268 S.E.2d 800, 805 (1980).

We find that the information provided by the State at the hearing did not constitute a bill of particulars. The statute requires the court to order the State to file a bill of particulars with the court and to serve the defendant with a copy of the bill. Here, instead of ordering the State to file a bill of particulars, the court denied the motion. The plain language of the statute indicates that a bill of particulars must be in writing in order to be *filed* or *served*. The statute also provides that the defendant is entitled

to information necessary for his defense. Defendant made no showing that the information requested was necessary for his defense. We find that the exchange in court did not satisfy the statutory requirements for a bill of particulars. Since we find that there was no bill of particulars, defendant's argument that there was a fatal variance between the charge and the indictment is without merit. Likewise, defendant's argument that evidence of cunnilingus was inadmissible as outside the scope of the bill of particulars must fail.

[2] In his third assignment of error, defendant argues that the trial court erred in denying the motion for a bill of particulars. A motion for a bill of particulars is within the sound discretion of the trial court, and we will reverse only upon a showing of palpable and gross abuse of that discretion. *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985). A denial of a motion for a bill of particulars may be reversed "when it clearly appears . . . that the lack of timely access to the requested information significantly impaired defendant's preparation and conduct of his case." *Easterling*, 300 N.C. at 601, 268 S.E.2d at 805. There was no showing that lack of the evidence requested by defendant impaired his defense. As held in *State v. Edwards*, 305 N.C. 378, 380, 289 S.E.2d 360, 362 (1982), short form indictments for first-degree rape and first-degree sexual offense satisfy the statutory requirements and provide defendant adequate notice of the alleged offenses. Since defendant has shown no impairment of his defense, we find no error in the denial of the motion for a bill of particulars.

[3] In his fourth assignment of error, defendant contends that the trial court erred in allowing Kathy Kitchen, a child victim advocate, to testify as to the consistency of the victim's testimony at trial and previous statements made during interviews. On direct examination, Ms. Kitchen testified to what the victim told her about the alleged abuse. On cross-examination defense counsel questioned Ms. Kitchen about her conversations with the victim prior to the trial and during the trial. The following occurred on re-direct:

Q During those periods of time, did she ever tell you anything different from what she told on the witness stand?

MR. LIND: Objection to that question.

THE COURT: Overruled.

A No.

STATE v. STALLINGS

[107 N.C. App. 241 (1992)]

Defendant argues that, although Ms. Kitchen was not formally tendered as an expert, her opinion as to the consistency of the victim's statements invaded the province of the jury. We disagree.

Ms. Kitchen testified as a lay witness. Although Ms. Kitchen may have been qualified to testify as an expert witness, the State did not tender her as an expert, and the trial court did not accept her as such either explicitly or implicitly. *See State v. Greime,* 97 N.C. App. 409, 388 S.E.2d 594 (1990); *Cato Equipment Co., Inc. v. Matthews,* 91 N.C. App. 546, 372 S.E.2d 872 (1988). N.C. Gen. Stat. § 8C-1, Rule 701 (1988) provides that a lay witness may testify "in the form of opinions or inferences . . . limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Here, Ms. Kitchen's testimony was simply that the victim never changed her story. It was admissible for the determination of a fact in issue the victim's credibility.

The testimony was also admissible as corroboration of the victim's testimony. Prior consistent statements of a witness are admissible to corroborate the testimony of that witness if the statements in fact corroborate the testimony. *State v. Holden,* 321 N.C. 125, 143, 362 S.E.2d 513, 526 (1987), *cert. denied,* 486 U.S. 1061, 100 L.Ed.2d 935 (1988). "The fact that a witness made a prior consistent statement is admissible as evidence tending to strengthen the witness' credibility." *State v. Cox,* 303 N.C. 75, 83, 277 S.E.2d 376, 381 (1981). Prior consistent statements are admissible even when there has been no impeachment. *State v. Martin,* 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983).

Defendant relies upon *State v. Norman,* 76 N.C. App. 623, 334 S.E.2d 247, *disc. review denied,* 315 N.C. 188, 337 S.E.2d 863 (1985) to support his argument that Ms. Kitchen could not properly testify to the consistency of the victim's statements. In *Norman,* we found prejudicial error, stating that

[w]itness Kirkman was not asked to relate to the jury what Patillo had said to him, only to give his opinion as to whether whatever was said by Patillo before trial was "essentially what he testified to." In our opinion, this carries the liberality of the consistent statement rule too far. At the least, Officer Kirkman should have been put to the test of recalling for the jury what Patillo had told him before trial before giving

his opinion as to whether Patillo had been consistent in his pre-trial statements and trial testimony.

*Id.* at 627, 334 S.E.2d at 250. *Norman* is distinguishable from the issue in the case at bar. The key distinction is that Ms. Kitchen first testified to the statements the victim made to her in the previous meetings. After recalling for the jury what the victim told her before trial, Ms. Kitchen then responded in a short form manner that the victim's trial testimony was consistent with her previous statements. We note also that the trial court instructed the jury three times to consider the testimony offered by Ms. Kitchen only in determining the victim's truthfulness. Ms. Kitchen did not testify as to the victim's truthfulness, but rather as to the consistency in her statements. We find no error in the admission of Ms. Kitchen's testimony.

[4] In his fifth assignment of error, defendant contends that the trial court erred in permitting Dr. Sharpless, a pediatrician, to testify that the victim was suffering from CSAAS. We agree. Specifically, Dr. Sharpless testified:

Q. What was her demeanor throughout the time that you were talking to her?

A. It was very sad and somewhat agitated. She had a very flat affect, seemed quite depressed.

Q. And based upon her testimony and her flat affect, were you able to form an opinion satisfactory to yourself as to what, if any, syndromes she was suffering from?

* * * *

A. Yes. It was my opinion that she was suffering from the sexual abused accommodation syndrome, which is an emotional syndrome that children often show when they're involved in sexual abuse.

CSAAS consists of five categories of behavior exemplified by children who are victims of sexual abuse: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicted, and unconvincing disclosure; and, (5) retraction. John E. B. Myers, et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 Nebraska Law Review 1, 66-67 (1989). The syndrome is not a diagnostic tool for determining whether sexual abuse has occurred. *Id.* at 67. Rather,

the syndrome is founded on the premise that abuse has occurred and identifies behavior typical of sexually abused children. *Id.*

In *State v. Hall*, 330 N.C. 808, 823, 412 S.E.2d 883, 890 (1992), the North Carolina Supreme Court held that evidence of post traumatic stress syndrome and conversion disorder was inadmissible as substantive evidence to show rape had in fact occurred, but was admissible for corroborative purposes. The Court first concluded that both disorders were sufficiently recognized in the medical community to be the subject of expert testimony by virtue of their inclusion in the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorder (3d ed. rev. 1987). Although the proper subject of expert testimony, the Court specified two problems in admitting syndrome testimony for substantive purposes.

> First, the psychiatric procedures used in developing the diagnosis are designed for therapeutic purposes and are not reliable as fact-finding tools to determine whether a rape has in fact occurred. Second, the potential for prejudice looms large because the jury may accord too much weight to expert opinions stating medical conclusions which were drawn from diagnostic methods having limited merit as fact-finding devices. In excluding rape trauma syndrome evidence, the California Supreme Court has stated that:
>
> > [A]s a rule, rape counselors do not probe inconsistencies in their clients' descriptions of the facts of the incident, nor do they conduct independent investigations to determine whether other evidence corroborates or contradicts their clients' renditions. Because their function is to help their clients deal with the trauma they are experiencing, the historical accuracy of the clients' descriptions of the details of the traumatizing events is not vital in their task. To our knowledge, all of the studies that have been conducted in this field to date have analyzed data that have been gathered through this counseling process and, as far as we are aware, none of the studies has attempted independently to verify the "truth" of the clients' recollections or to determine the legal implication of the clients' factual accounts.
>
> *People v. Bledsoe*, 36 Cal. 3d 236, 250, 681 P.2d 291, 300, 203 Cal. Rptr. 450, 459 (1984). The *Bledsoe* court also expressed its concern that rape trauma syndrome "does not consist of

a relatively narrow set of criteria or symptoms whose presence demonstrates that the client or patient has been raped; rather, . . . it is an 'umbrella' concept, reflecting the broad range of emotional trauma experienced by clients of rape counselors." *Id.* at 250, 681 P.2d at 301, 203 Cal. Rptr. at 460. It is this lack of critical inquiry into the factual accuracy of complainant's story that renders this evidence's probative value slight, and its helpfulness to the jury minimal. Thus, the demand of Evidence Rule 702 that the special knowledge of the expert "assist the trier of fact to understand the evidence or to determine a fact in issue" is hardly met.

. . . In those cases where post-traumatic stress syndrome evidence is admitted to prove sexual abuse has in fact occurred, we believe the potential for prejudice against the defendant looms large because of that aura of special reliability and trustworthiness often surrounding scientific or medical evidence. Thus, on balance, evidence that a prosecuting witness is suffering from post-traumatic stress syndrome should not be admitted for the substantive purpose of proving that a rape has in fact occurred.

*Id.* at 820-21, 412 S.E.2d at 889. The Court, however, concluded that the evidence could be introduced for corroborative purposes if the prosecution shows relevance to issues in dispute, the trial court tests the evidence in light of N.C. Gen. Stat. § 8C-1, Rule 403 and N.C. Gen. Stat. § 8C-1, Rule 702 (1988), and gives a limiting instruction. Citing *People v. Taylor*, 75 N.Y.2d 277, 552 N.E.2d 131, 552 N.Y.S.2d 883 (1990) in which the New York Court of Appeals permitted rape trauma syndrome testimony to explain the victim's initial unwillingness to report defendant as her attacker, the North Carolina Supreme Court adopted the reasoning that admissibility of rape syndrome testimony is dependent upon the purpose for which it is offered. The Court reasoned that, if the alleged victim testifies at trial, the jury has the opportunity to assess her credibility. Testimony concerning rape trauma syndrome, however, may be useful to the jury in explaining the victim's post assault behavior and dispel misconceptions and is therefore admissible for limited purposes. The Court concluded that the same evidentiary approach should be used in determining the admissibility of evidence on conversion disorders. *Hall*, 330 N.C. at 822, 412 S.E.2d at 890.

**STATE v. STALLINGS**

[107 N.C. App. 241 (1992)]

Following the reasoning set forth in *Hall*, we conclude that evidence of CSAAS was improperly admitted in the case at bar. We first note that the record is void of any evidence whether the syndrome has been generally accepted in the medical field. Assuming, without deciding, that CSAAS is the proper subject of expert testimony, we encounter the same two difficulties with CSAAS as our Supreme Court did with rape trauma syndrome and conversion disorder. First, CSAAS is not designed to determine whether a child has been abused, but rather assumes abuse has occurred. Second, "the potential for prejudice looms large because the jury may accord too much weight to expert opinions stating medical conclusions which were drawn from diagnostic methods having limited merit as fact-finding devices." Since there was no limiting instruction, the jury was permitted to consider Dr. Sharpless' testimony for both substantive *and* corroborative purposes, which was error.

Pursuant to N.C. Gen. Stat. § 15A-1443(a) (1988), defendant has the burden of proving that had the error not occurred, there is a reasonable possibility that a different result would have been reached at trial. Excluding the inadmissible testimony on CSAAS, there is overwhelming evidence of defendant's guilt. The victim's account was supported by the medical and physical evidence of penetration and the testimony of four other witnesses. Accordingly, we find no prejudicial error.

[5] In his final assignment of error, defendant argues the trial court erred in imposing a life sentence for the first-degree sexual offense. Defendant's punishment is not cruel and unusual. *See State v. Joyce*, 97 N.C. App. 464, 389 S.E.2d 136 (1990); *State v. Sellars*, 52 N.C. App. 380, 278 S.E.2d 907, *disc. review denied and appeal dismissed*, 304 N.C. 200, 285 S.E.2d 108 (1981).

For the reasons set forth above, we find

No error.

Judges ARNOLD and LEWIS concur.