STATE OF NORTH CAROLINA v. TIMOTHY WAYNE YOUNGS

No. COA99-1449

(Filed 29 December 2000)

**1. Evidence— expert testimony—minor victim suffered from major depressive disorder partly caused by defendant's sexual abuse—proper for diagnosis and treatment**

The trial court did not err in a prosecution for first-degree rape, first-degree sexual offense, incest, and indecent liberties by admitting an expert's opinion, based on the minor victim's statements, that the victim suffered from major depressive disorder partly as a result of her sexual abuse, because: (1) the expert's testimony was not admitted to prove that defendant was the perpetrator, but only to establish the victim's condition accompanied by the expert's resulting opinion under N.C.G.S. § 8C-1, Rule 702 that the child was the victim of sexual abuse; (2) the victim's statement identifying defendant father as the perpetrator is important for diagnosis and treatment, and the expert's statement was properly admitted to corroborate the victim's statements to the expert; and (3) defendant's contention that the expert's opinion was scientifically unreliable has no merit in light of the expert's experience and extensive work with the victim in this case, coupled with the results of the victim's physical examination made available to the expert.

**2. Sexual Offenses— indecent liberties—first-degree sexual offense—short-form indictments valid**

The trial court did not commit plain error by concluding that the short-form indictments for taking indecent liberties with a minor and first-degree sexual offense were valid even though the indictments did not set out each element of the offenses. N.C.G.S. §§ 14-27.4, 14-202.1, and 15-144.2(b).

**3. Sexual Offenses— bill of particulars—failure to show lack of information significantly impaired defense**

The trial court did not abuse its discretion in a prosecution for first-degree rape, first-degree sexual offense, incest, and indecent liberties by denying defendant's motion for a bill of particulars, because: (1) defendant has not shown that the lack of information requested in his motion significantly impaired his defense; (2) the short-form indictments provided defendant with

sufficient notice of the alleged offenses; (3) all discoverable information was made available to defendant; (4) the specificity as to details of the offenses was unavailable based on the age of the victim at the time of the offenses and could not be cured by a bill of particulars; and (5) the State was not required to prove which particular form of abuse defendant committed.

**4. Sexual Offenses— first-degree—jury instruction on which sex act defendant committed not required**

The trial court did not commit plain error by failing to instruct the jury that it must be unanimous as to which sex act defendant committed in order to convict him of first-degree sexual offense, because: (1) the trial court's instructions were consistent with N.C.G.S. § 14-27.1(4); and (2) the single wrong of engaging in a sexual act with a minor may be established by a finding of the commission of any one of a number of acts.

**5. Sexual Offenses— indecent liberties—jury instruction on actus reus not required**

The trial court did not commit plain error by failing to instruct the jury on the actus reus to support the charge of taking indecent liberties with a minor, because: (1) the instruction given by the court is consistent with our Supreme Court's prior holding that the gravamen of the offense is defendant's purpose for committing such act and the particular act performed is immaterial; and (2) the instruction given is consistent with N.C.G.S. § 14-202.1.

**6. Sexual Offenses— indecent liberties—statute sufficient to give a defendant notice**

N.C.G.S. § 14-202.1 sufficiently gives a defendant notice of the sexual conduct our legislature considers immoral, improper, and indecent liberties.

Appeal by defendant from judgments entered 15 April 1999 by Judge William C. Gore, Jr., in Brunswick County Superior Court. Heard in the Court of Appeals 17 October 2000.

*Michael F. Easley, Attorney General, by Sarah Y. Meacham, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

EDMUNDS, Judge.

Defendant appeals his convictions of first-degree rape, first-degree sexual offense, incest, and indecent liberties with a child. We find no error.

At defendant's trial, the State presented evidence that defendant and his three children moved to North Carolina in January 1994, along with defendant's girlfriend, Tuesday Bancroft (Tuesday), and Tuesday's daughter. At this time, the victim in the case, one of defendant's daughters, was in kindergarten or first grade. We shall refer to her in this opinion as "A."

When "A" was in the first or second grade, Tuesday and her daughter temporarily moved out of the residence after a dispute with defendant. During their absence, defendant engaged in vaginal, anal and oral intercourse with "A." "A" testified that on several occasions while the children were taking their naps, defendant would ask her to come into his room and undress. After instructing "A" to get on the bed, he would assault her. Defendant instructed "A" not to tell anyone about the assaults. In particular, "A" testified of an incident in December 1995 when social service worker Diane Setaro (Setaro) visited the Youngs' residence, and defendant told "A" not to tell Setaro about the assaults.

"A" first told Tuesday's daughter about the incidents but asked her not to tell anyone. "A" also confided to a girl next door about what defendant had done to her, and two years later she told Tuesday about the assaults. On 16 January 1998, when "A" was in the fourth grade, she visited her school counselor Carolyn Cogsdale (Cogsdale) and described her living situation, her assigned chores, and the whippings she received daily. Although "A" visited Cogsdale on her own volition, she had also been referred to Cogsdale by her teacher because of her sadness and unkempt appearance. After this meeting, Cogsdale notified the Department of Social Services of the possibility of child neglect and abuse. During meetings between 16 January 1998 and 21 January 1998, "A" revealed to Cogsdale that defendant had sexually abused her. Cogsdale again contacted the Department of Social Services and continued to see "A" on a daily basis until the end of the school year.

Setaro visited the Youngs' residence a second time on 22 January 1998 to discuss allegations of abuse and neglect. The next day, Setaro visited "A" at school, where "A" revealed that defendant had

STATE v. YOUNGS

[141 N.C. App. 220 (2000)]

sexually abused her. "A" also described the sexual abuse to Investigator Leslie Moore of the Brunswick County Sheriff's Department on 13 March 1998.

On 3 February 1998, "A" was examined by Dr. James Forstner (Dr. Forstner). He determined that "A" 's hymen was abnormal. His examination results were consistent with vaginal and oral penetration and suggestive of anal penetration. On 19 February 1998, "A" met with psychologist Diane Lattimer (Dr. Lattimer) and continued to visit her at least forty-five times prior to trial. Dr. Lattimer observed that "A" was disheveled, shy, avoided eye contact, and exhibited anxiety, sadness, decreased appetite, insomnia, decreased energy level, and decreased ability to concentrate. Dr. Lattimer diagnosed "A" with dysthymic disorder and major depressive disorder and determined that "A" exhibited symptoms typical of post-traumatic stress syndrome. At trial, Dr. Lattimer testified that in her opinion "A" had been sexually abused.

On the basis of this evidence, defendant was indicted for three counts of first-degree rape in violation of N.C. Gen. Stat. § 14-27.2 (1999), three counts of indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1 (1999), three counts of first-degree sexual offense in violation of N.C. Gen. Stat. § 14-27.4 (1999), and three counts of incest in violation of N.C. Gen. Stat. § 14-178 (1999). Prior to trial, defendant filed a motion for a bill of particulars requesting the precise date, time and place of the crimes charged and the specific sexual acts constituting the indecent liberties and first-degree sexual offense charges. This motion was denied, and the cases were joined for trial.

At the close of the State's evidence, eight charges were dismissed, leaving one count of first-degree rape, one count of indecent liberties with a child, one count of first-degree sex offense and one count of incest, all of which occurred between 17 August 1996 and 17 August 1997. Defendant presented evidence consisting only of his testimony denying the allegations. Thereafter, the jury found defendant guilty of all charges. He was sentenced to a minimum of 240 months and a maximum of 297 months for first-degree rape, and a minimum of 192 months and a maximum of 240 months for first-degree sexual offense, incest, and indecent liberties with a child, to be served at the conclusion of his rape sentence. Defendant appeals.

I.

**[1]** Defendant's first assignment of error relates to the admission of Dr. Lattimer's expert opinion that "A" suffered from major depressive disorder as a result, in part, from sexual abuse. Defendant presents a three-part argument, first asserting that Dr. Lattimer's opinion was inadmissible to prove abuse by defendant. Next, defendant contends that Dr. Lattimer's opinion lacked adequate foundation, because an expert witness may not testify that a complainant has been sexually abused on the basis of the complainant's history. Finally, defendant argues that Dr. Lattimer's opinion was scientifically unreliable. We will address these contentions *seriatim*.

### A. Dr. Lattimer's diagnosis

Defendant argues that Dr. Lattimer's diagnosis of the victim's psychological disorder was admitted to prove that she had been abused by defendant. However, our review of the record indicates that Dr. Lattimer's testimony described "A"'s condition and her resulting expert diagnosis. The testimony was not admitted to prove that defendant was the perpetrator, but only to establish the victim's condition, accompanied by Dr. Lattimer's resulting opinion that "A" was the victim of sexual abuse. Dr. Lattimer only once discussed defendant as the perpetrator, and in this instance, she merely relayed the information given to her by "A" during treatment. Dr. Lattimer testified, in part:

Q: And at some point during a later meeting did you have an opportunity to discuss anything that ["A"] would have told you about herself and her father, Timothy Youngs?

A: Yes, on February 23rd ["A"] was playing with the dollhouse and initially she did not want to talk about the abuse. Typically I would introduce that by saying, you know, tell me about you and your daddy and leave it very open-ended and see how she responds. After about a half-an-hour I asked her again to show me with the dolls what had happened and she did move the dolls around in the dollhouse and then she began talking and she said that, "He did it to me a couple of times in the house on Walker Street." That it happened in her dad's bedroom during an afternoon on the weekend while her siblings were asleep. ["A"] told me that her father told her to come in to his bedroom and take off her clothes. She said that he was on top of her and that she was on top of him. That she felt she couldn't ask him to stop because

she was afraid she would get into trouble. She reported oral, anal, and vaginal penetration. She stated that she would get bad feelings and that she was afraid that the whole world would end and that everyone would hate her because of this.

This Court has previously held that "[w]here children are examined by physicians for diagnosis and treatment of alleged sexual abuse, details of the offense, *including the identity of the offender*, provided by the child during such examination are generally admissible at trial." *State v. Rogers*, 109 N.C. App. 491, 501-02, 428 S.E.2d 220, 226 (1993) (emphasis added) (citations omitted); *see also State v. Smith*, 315 N.C. 76, 85, 337 S.E.2d 833, 840 (1985) (noting that when identification of a perpetrator is disclosed to aid in medical diagnosis or treatment, "the trustworthiness remains intact," and the identification is thus admissible).

The Supreme Court has held that the identity of a perpetrator is important for diagnosis in child sexual abuse cases for two reasons:

First, a proper diagnosis of a child's psychological problems resulting from sexual abuse or rape will often depend on the identity of the abuser. Second, information that a child sexual abuser is a member of the patient's household is reasonably pertinent to a course of treatment that includes removing the child from the home.

*State v. Aguallo*, 318 N.C. 590, 597, 350 S.E.2d 76, 80 (1986) (citation omitted). Our courts have consistently affirmed these principles. *See, e.g., State v. Hughes*, 114 N.C. App. 742, 443 S.E.2d 76 (1994) (finding no error in allowing physician to testify that child victim identified her father as the perpetrator); *Rogers*, 109 N.C. App. 491, 428 S.E.2d 220 (holding that child victim's statements regarding the identity of her perpetrator made to her therapist and physician during treatment were admissible). "A" 's statements to Dr. Lattimer identifying her father as her assailant are admissible on grounds that the information was pertinent to "A" 's diagnosis and treatment. Accordingly, this evidence was not presented to establish that "A" 's condition was caused by defendant. "A" testified at trial and identified defendant as her perpetrator. Therefore, Dr. Lattimer's testimony corroborates "A" 's testimony and is also admissible on this ground.

B.  Expert testimony that the victim had been sexually abused

At trial, after being qualified and accepted by the court as an expert in the field of child psychology, Dr. Lattimer testified that, in

her opinion, "A" had been sexually abused. Defendant contends that admission of this opinion was error, particularly because it was based on "A" 's statements to Dr. Lattimer.

Rule 702 of the North Carolina Rules of Evidence governs the admission of testimony by experts and states, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (1999). An expert may testify to the facts or data forming the basis of his opinion pursuant to N.C. Gen. Stat. § 8C-1, Rule 703 (1999), and an expert opinion as to an ultimate issue is admissible under N.C. Gen. Stat. § 8C-1, Rule 704 (1999).

Our courts have consistently upheld the admission of expert testimony that a victim was sexually abused. *See Smith*, 315 N.C. 76, 337 S.E.2d 833; *State v. Crumbley*, 135 N.C. App. 59, 519 S.E.2d 94 (1999); *State v. Figured*, 116 N.C. App. 1, 446 S.E.2d 838 (1994); *Hughes*, 114 N.C. App. 742, 443 S.E.2d 76; *State v. Richardson*, 112 N.C. App. 58, 434 S.E.2d 657 (1993); *State v. Reeder*, 105 N.C. App. 343, 413 S.E.2d 580 (1992); *State v. Speller*, 102 N.C. App. 697, 404 S.E.2d 15, *appeal dismissed*, 329 N.C. 503, 407 S.E.2d 548 (1991); *State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988). Moreover, " 'where the expert's testimony relates to a diagnosis derived from the expert's examination of the [child] witness in the course of treatment, it is not objectionable because it supports the credibility of the witness or . . . *states an opinion that abuse has occurred.*' " *Reeder*, 105 N.C. App. at 349-50, 413 S.E.2d at 583 (emphasis added) (citation omitted).

Although defendant cites *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987) and *State v. Parker*, 111 N.C. App. 359, 432 S.E.2d 705 (1993) for the proposition that Dr. Lattimer's testimony was inadmissible, these cases have recently been distinguished by this Court:

> Defendant's reliance on [*Trent* and *Parker*] to support his argument is misplaced. Those cases did not hold that an expert's opinion that a child had been sexually abused was inadmissible because it merely attests to the truthfulness of the child witness. Rather, in those cases the Court found the opinions inadmissible because the State failed to lay sufficient foundation for the opinions.

*Figured*, 116 N.C. App. at 8, 446 S.E.2d at 842. Accordingly, an expert may testify to his opinion that a child has been sexually abused as long as this conclusion relates to a diagnosis based on the expert's examination of the child during the course of treatment. *See id.*; *State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 90 (1997) (distinguishing *Trent* and *Parker* by noting that "[i]n both cases, the Courts found that since the experts found no clinical evidence that would support a diagnosis of sexual abuse, their opinions that sexual abuse had occurred merely attested to the truthfulness of the child witness").

The facts of the present case are distinguishable from *Trent* and *Parker*. Dr. Lattimer testified that she is a professional psychologist in private practice in Wilmington, North Carolina, specializing in children and adolescents. She was accepted as an expert witness in the field of child psychology. She stated that after "A" was referred to her by the Department of Social Services, she treated "A" on at least forty-five occasions prior to trial. Based on her observations during treatment, her professional experience, and the report of Dr. Forstner, Dr. Lattimer testified that in her opinion "A" had been sexually abused. Specifically, she stated:

Q: And you stated that under that same Axis 1 you had noted sexual abuse of a child.

A: Yes.

Q: What does that mean?

A: That is another condition which may be a focus of treatment but it is not a medical diagnosis. I based that on my interview with "A", what she told me, and on the report which I reviewed from Dr. Forstner.

Q: And were the symptoms you have just described and the way that she presented herself also factored into that diagnosis?

A: They were but I wouldn't base the diagnosis of Major Depression solely on a history of sexual abuse. When anyone experiences a major depression we look at many factors, both physiological factors and environmental factors to meet that.

Q: Is it fair to say that during the course of your conversations with "A" that environmental factors were part of the things she expressed concerns over?

A: Yes.

Q: Based on your years of study in this field and your practical application of your studies and your treatment of patients in your office over the years, were you able to form an opinion as to whether or not this child had been sexually abused?

A: Yes, I did.

Q: What was your opinion?

A: My opinion was that she had been sexually abused.

This testimony established a sufficient foundation to permit the trial court to allow Dr. Lattimer's expert opinion to be admitted into evidence. Her opinions were based on adequate data obtained during and for the purposes of treatment of "A" and were admissible as expert testimony under Rule 702.

### C. Reliability of expert testimony identifying sexual abuse in victim

Finally, defendant argues that "there was no showing that Dr. Lattimer had any such experience" in identifying children who have been sexually abused. Defendant's contention that Dr. Lattimer's opinion was scientifically unreliable, however, is without merit.

Rule 702 of the North Carolina Rules of Evidence has been interpreted "to admit expert testimony when it will assist the jury 'in drawing certain inferences from facts, and the expert is better qualified than the jury to draw such inferences.' " *State v. Parks*, 96 N.C. App. 589, 592, 386 S.E.2d 748, 750 (1989) (citation omitted). In the context of the case at bar, "[t]he nature of the sexual abuse of children . . . places lay jurors at a disadvantage. Common experience generally does not provide a background for understanding the special traits of these witnesses." *State v. Oliver*, 85 N.C. App. 1, 11, 354 S.E.2d 527, 533 (1987).

> A trial court is afforded wide latitude in applying Rule 702 and will be reversed only for an abuse of discretion. Moreover, the determination whether the witness has the requisite level of skill to qualify as an expert witness is ordinarily within the exclusive province of the trial judge, and "[a] finding by the trial judge that the witness possesses the requisite skill will not be reversed on appeal unless there is no evidence to support it."

*Parks*, 96 N.C. App. at 592, 386 S.E.2d at 750 (internal citations omitted). In light of Dr. Lattimer's experience and her extensive work with

the victim in this case, coupled with the results of Dr. Forstner's physical examination that had been made available to Dr. Lattimer, the trial court did not abuse its discretion in qualifying Dr. Lattimer as an expert in child psychology or in admitting her opinion relating to her treatment and diagnosis of "A". Defendant's assignments of error relating to the admission of Dr. Lattimer's testimony are overruled.

## II.

[2] Defendant next contends that the indictments in the case were impermissibly vague. Specifically, defendant argues that "[t]he indictments for taking indecent liberties with a minor and first degree sexual offense are defective as a matter of law in not setting out each element of the offenses, in violation of [his] state and federal constitutional rights to due process of law." We begin by noting that defendant properly concedes that he did not make an objection to this issue below. Appellate courts will not consider constitutional questions that were not raised and decided at trial. *See State v. Waddell*, 130 N.C. App. 488, 504 S.E.2d 84 (1998), *aff'd as modified*, 351 N.C. 413, 527 S.E.2d 644 (2000). Nevertheless, we will address defendant's arguments and review for plain error pursuant to the discretionary authority accorded us by N.C. R. App. P. 2.

Defendant's argument requires that we examine the applicable statutes. Section 14-27.4 of the North Carolina General Statutes, entitled First-Degree Sexual Offense, provides in pertinent part:

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim . . . .

N.C. Gen. Stat. § 14-27.4. Section 14-202.1, entitled Taking Indecent Liberties with Children, states:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or las-
civious act upon or with the body or any part or member of
the body of any child of either sex under the age of 16 years.

N.C. Gen. Stat. § 14-202.1.

In interpreting these statutes, our courts have noted that:

In general, an indictment couched in the language of the
statute is sufficient to charge the statutory offense. It is also gen-
erally true tha[t] an indictment need only allege the ultimate facts
constituting the elements of the criminal offense and that evi-
dentiary matters need not be alleged.

Regarding an indictment drafted under N.C.G.S. § 14-27.4, our
Supreme Court has held that such an indictment is sufficient to
charge the crime of first-degree sexual offense and to inform the
defendant of such an accusation without specifying which "sex-
ual act" was committed. Similarly, . . . an indictment charging a
defendant under N.C.G.S. § 14-202.1 [is] sufficiently specific
without indicating exactly which of defendant's acts constitute[s]
the "immoral, improper and indecent liberty."

*State v. Blackmon*, 130 N.C. App. 692, 699, 507 S.E.2d 42, 46-47 (inter-
nal citations omitted), *cert. denied*, 349 N.C. 531, 526 S.E.2d 470
(1998).

In the case at bar, the indictment for first-degree sexual offense
stated:

THE JURORS for the State upon their oath present that
between the 17th day of August, 1995, and the 17th day of August
1996 and in the county named above the defendant named above
unlawfully, willfully and feloniously did engage in a sex offense
with ["A"], a child under the age of 13 years, against the form of
the statute in such case made and provided and against the peace
and dignity of the State.

This indictment complies with the statutory language and principles
set forth above. Virtually identical indictments have been upheld by
our courts in *Blackmon* and *State v. Edwards*, 305 N.C. 378, 380, 289
S.E.2d 360, 362 (1982) (noting that "an indictment without specifying
which 'sexual act' was committed is sufficient to charge the crime of
first-degree sexual offense and to inform a defendant of such accusa-
tion"). The indictment also satisfies section 15-144.2 of the North
Carolina General Statutes, which provides, in part:

If the victim is a person under the age of 13 years, it is sufficient to allege that the defendant unlawfully, willfully, and feloniously did engage in a sex offense with a child under the age of 13 years, naming the child, and concluding as aforesaid. Any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for a sex offense against a child under the age of 13 years and all lesser included offenses.

N.C. Gen. Stat. § 15-144.2(b) (1999).

The indictment against defendant for indecent liberties with a child, provided:

THE JURORS for the State upon their oath present that between the 17th day of August, 1995, and the 17th day of August 1996, and in the county named above the defendant named above unlawfully, willfully and feloniously did take and attempt to take immoral, improper, and indecent liberties with the child named below for the purpose of arousing and gratifying sexual desire and did commit a lewd and lascivious act upon the body of the child named below. At the time of this offense, the child named below was under the age of 16 years and the defendant named above was over 16 years of age and at least five years older than the child. The name of the child is ["A"], against the form of the statute in such case made and provided and against the peace and dignity of the State.

This indictment also complies with the principles set out above. Similar indictments have been upheld by this Court in *Blackmon* and *State v. Singleton*, 85 N.C. App. 123, 354 S.E.2d 259 (1987). Accordingly, this assignment of error is overruled.

III.

[3] Defendant also argues that the trial court erred by not granting his motion for a bill of particulars. Specifically, he contends that the trial court's ruling deprived him of his state and federal constitutional rights to due process of law and to a fair opportunity to defend himself.

"An appellate court should reverse the denial of a motion for a bill of particulars only if it clearly appears that the 'lack of timely access to the requested information significantly impaired defendant's preparation and conduct of his case.' " *State v. Hines*, 122 N.C.

App. 545, 551, 471 S.E.2d 109, 113 (citation omitted), *disc. review allowed*, 344 N.C. 634, 477 S.E.2d 47 (1996), *disc. review improvidently allowed*, 344 N.C. 627, 481 S.E.2d 85 (1997). Indeed, "[a] motion for a bill of particulars is within the sound discretion of the trial court, and we will reverse only upon a showing of palpable and gross abuse of that discretion." *State v. Stallings*, 107 N.C. App. 241, 246, 419 S.E.2d 586, 589 (1992) (citation omitted), *disc. review allowed*, 333 N.C. 348, 426 S.E.2d 713, *disc. review improvidently allowed*, 333 N.C. 784, 426 S.E.2d 717 (1993).

Here, defendant has not shown that the lack of information requested in his motion significantly impaired his defense. As set forth in section II above, short-form indictments for first-degree sexual offense and indecent liberties with a child meet the statutory requirements and provide defendant with sufficient notice of the alleged offenses. All discoverable information was made available to defendant; while some specificity as to the details of the offenses was unavailable because of the age of the victim at the time of the offenses, this difficulty could not have been cured by a bill of particulars. The missing details related to the particular form of sexual abuse inflicted on the victim and, as noted above, the State was not required to prove which particular form of abuse defendant committed. Because defendant has shown no impairment of his defense, the trial court did not abuse its discretion in denying his motion for a bill of particulars. *See Blackmon*, 130 N.C. App. 692, 507 S.E.2d 42; *Stallings*, 107 N.C. App. 241, 419 S.E.2d 586.

IV.

**[4]** Defendant next contends that the trial court erred in not instructing the jury that it must be unanimous as to which sex act defendant committed in order to convict him of first-degree sexual offense. Defendant's position is that the failure to give the requested instruction violated his state and federal constitutional rights to a unanimous jury verdict and to due process of law. Defendant again concedes that he did not object to this issue at trial. As noted above, although appellate courts will not consider constitutional questions that were not raised and decided at trial, *see Waddell*, 130 N.C. App. 488, 504 S.E.2d 84, we nevertheless will review for plain error pursuant to the discretionary authority accorded us by N.C. R. App. P. 2.

The issue raised by defendant in this assignment of error has already been analyzed and decided by this Court. In *State v. Petty*,

132 N.C. App. 453, 512 S.E.2d 428, *appeal dismissed*, 350 N.C. 598, 537 S.E.2d 490 (1999), we stated:

> The statutory definition of "sexual act" does not create disparate offenses, rather it enumerates the methods by which the single wrong of engaging in a sexual act with a child may be shown. Furthermore, our Supreme Court has expressly determined that disjunctive jury instructions do not risk nonunanimous verdicts in first-degree sexual offense cases.

*Id.* at 462, 512 S.E.2d at 434 (citations omitted).

> In *Petty*,

> the trial court instructed the jury that it could find Defendant guilty of a first-degree sexual offense if, in addition to the other elements of first-degree sexual offense, it found that Defendant had "engaged in a sexual act which was cunnilingus, with—or any penetration, however slight, by an object into the genital area of a person's body."

*Id.* at 462-63, 512 S.E.2d at 434. This Court held that:

> [t]his charge was not error, because the single wrong of engaging in a sexual act with a minor may be established by a finding of various alternatives, including cunnilingus and penetration. Cunnilingus and penetration are not disparate crimes, but are merely alternative ways of showing the commission of a sexual act. The trial court's disjunctive instruction therefore did not risk a nonunanimous verdict. As in *Hartness*, "[e]ven if we assume that some jurors found that [cunnilingus] occurred and others found that [penetration] transpired, the fact remains that the jury as a whole would unanimously find that there occurred sexual conduct" constituting the single crime of engaging in a sexual act with a child.

*Id.* at 463, 512 S.E.2d at 434-35 (citation omitted).

In the case at bar, the court instructed the jury in accordance with the pattern instruction:

> The defendant has been charged in 98-CRS-1787 with the charge of first degree sexual offense. I charge that for you to find the defendant guilty of first degree sexual offense the State must prove three things beyond a reasonable doubt. First, that the defendant engaged in a sexual act with the victim. A sexual act

means fellatio, which is any touching by the tongue or by the lips or tongue of one person of the male sex organ of another. It also means a sex act anal intercourse, which is any penetration, however slight, of the anus of any person by the male sexual organ of another. Second, the State must prove that at the time of the acts alleged the victim was a child under the age of 13. Third, the State must prove that at the time of the alleged offense the defendant was at least 12 years old and was four years older than the victim . . . .

"Sexual act" is defined by our statutes as, "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any *object into the genital or anal opening of another person's body.*" N.C. Gen. Stat. § 14-27.1(4) (1999). The court's instructions were consistent with the statute and with this Court's holding in *Petty.* As such, this assignment of error is overruled.

V.

**[5]** In his next assignment of error, defendant argues that the trial court did not instruct the jury on the *actus reus* to support the charge of taking indecent liberties with a minor, denying him his state and federal rights to a unanimous jury verdict and to due process of law. Although defendant concedes that the trial court's instructions "accord with the current caselaw of North Carolina," he asserts that the instructions are in conflict with federal constitutional law. Again, defendant did not raise these constitutional arguments at trial, and as a result, this assignment of error is subject to dismissal. *See Waddell,* 130 N.C. App. 488, 504 S.E.2d 84 (dismissing defendant's argument that the trial court erred by declining to instruct the jury on the *actus reus* for each criminal charge where defendant raised no constitutional argument regarding this issue at trial). As before, however, we will exercise the discretionary authority accorded us by N.C. R. App. P. 2 to review this assignment of error under the plain error standard.

As defendant correctly points out in his appellate brief, our Supreme Court has previously addressed this issue, holding that:

[a]s the statute indicates, the crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts. The evil the legislature sought to prevent in this context was the defendant's performance of any

immoral, improper, or indecent act in the presence of a child "for the purpose of arousing or gratifying sexual desire." Defendant's purpose for committing such act is the gravamen of this offense; *the particular act performed is immaterial.* It is important to note that the statute does not contain any language requiring a showing of intent to commit an unnatural sexual act. Nor is there any requirement that the State prove that a touching occurred. Rather, the State need only prove the taking of any of the described liberties for the purpose of arousing or gratifying sexual desire.

*State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180-81 (1990) (emphasis added) (citation omitted).

The trial court again instructed the jury in accordance with the pattern instructions:

In 98-CRS-1784 the defendant has been accused of taking an indecent liberty with a child. I charge that for you to find the defendant guilty of taking an indecent liberty with a child the State must prove three things beyond a reasonable doubt. First, that the defendant willfully took an indecent liberty with a child for the purpose of arousing or gratifying sexual desire. An indecent liberty is an immoral, improper or indecent touching by the defendant upon the child or you may find that the defendant committed a lewd or lascivious act upon a child. Second, the State must prove that the child had not reached her sixteenth birthday at the time in question, that is, as of August 17th, 1996. Third, that the defendant was at least five years older than the child and had reached his sixteenth birthday at that time.

This instruction is consistent with *Hartness* and the applicable statute cited in section II above. Accordingly, there is no error in the trial court's instruction in this case.

## VI.

[6] Finally, defendant argues that the indecent liberties statute is unconstitutionally vague as applied to him. However, defendant did not assign error to this constitutional issue in the record on appeal. Moreover, our Supreme Court previously addressed this issue and held that "[t]he language of G.S. 14-202.1 provides a defendant with sufficient notice of what is criminal conduct. The statute clearly prohibits sexual conduct with a minor child and describes with reasonable specificity the proscribed conduct." *State v. Elam*, 302 N.C. 157,

162, 273 S.E.2d 661, 665 (1981); *see also Blackmon*, 130 N.C. App. at 700, 507 S.E.2d at 47 (stating that "[b]ecause the holding in *Elam* controls, we conclude that N.C.G.S. § 14-202.1 sufficiently [apprises] a defendant of the sexual conduct our legislature considers 'immoral, improper, and indecent liberties'"). This assignment of error is overruled.

No error.

Judges GREENE and MARTIN concur.