STATE OF NORTH CAROLINA v. VICTOR JEROME WADE, Defendant

STATE OF NORTH CAROLINA v. RODERICK JERMAINE YOUNG, Defendant

No. COA10-412

(Filed 19 July 2011)

### 1. Evidence— testimony—failure to show prejudicial error based on exclusion

The trial court did not abuse its discretion in an assault with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a convicted felon case by sustaining the State's objections and motions to strike and not allowing into evidence certain testimony from witnesses. Defendant failed to

show a different result would have been reached at trial absent these alleged errors.

**2. Evidence— prior inconsistent statements—impeachment— failure to show prejudicial error**

The trial court did not err in an assault with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a convicted felon case by permitting the prosecutor, over objection, to state before the jury the prosecutor's recollection of the alleged victim's testimony at a probable cause hearing where the victim denied recollection. Defendant failed to show any prejudicial error when the substantive information had already been introduced into evidence.

**3. Evidence— testimony—exclusion—failure to show prejudicial error**

The trial court did not err in an assault with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a convicted felon case by sustaining the State's objection to testimony that the victim was favoring his back pocket like he was getting ready to whip out a gun and by sustaining the State's objection to testimony from the victim's girlfriend that she heard the victim saying he was going to get his gun. Defendant failed to show a different result would have been reached at trial absent these alleged errors.

**4. Assault— deadly weapon with intent to kill inflicting serious injury—possession of firearm by convicted felon— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charges of assault with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a convicted felon. There was substantial evidence of each essential element of the offenses charged and of defendant Wade being one of the perpetrators of the offense.

**5. Evidence— inconsistent statements—plain error review**

The trial court did not err or commit plain error in an assault with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a convicted felon case by permitting the prosecutor to question the victim regarding his inconsistent statements at a probable cause hearing.

6. **Assault— deadly weapon with intent to kill inflicting serious injury—acquittal for attempted first-degree murder not inconsistent or mutually exclusive**

The trial court did not err by accepting the verdict of assault with a deadly weapon with intent to kill inflicting serious injury (AWDWIKISI) as to defendant Wade because the jury's acquittal of defendant for attempted first-degree murder and his conviction for AWDWIKISI were not inconsistent or mutually exclusive.

Appeal by defendants from judgments entered 24 July 2009 by Judge James W. Morgan in Superior Court, Cleveland County. Heard in the Court of Appeals on 11 October 2010.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Steven Armstrong, for the State.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Dahr Joseph Tanoury, for the State.*

*Kevin P. Bradley, for defendant-appellant Young.*

*Daniel F. Read, for defendant-appellant Wade.*

STROUD, Judge.

Victor Jerome Wade and Roderick Jermaine Young (referred to collectively as "defendants") appeal from their individual convictions for assault with a deadly weapon with the intent to kill and inflicting serious injury and possession of a firearm by a convicted felon. For the following reasons, we find no prejudicial error in defendants' trial.

## I. Background

On 21 July 2008, defendant Wade was indicted on one count of attempted first-degree murder, one count of assault with a deadly weapon with the intent to kill and inflicting serious injury ("AWDWIKISI"), and possession of a firearm by a convicted felon. On 23 July 2008, defendant Young was also indicted on one count of attempted first-degree murder, AWDWIKISI, and possession of a firearm by a convicted felon. On 25 June 2009, the State filed a motion requesting that defendants be tried jointly, which was granted by the trial court on or about 20 July 2009. Defendants were tried jointly on these charges during the 20 July 2009 Criminal Session of Superior Court, Cleveland County.

The State's evidence tended to show that on 1 May 2008 there was a party at a house on Mint Street in Shelby, North Carolina. At this party people were consuming and using various types of alcohol and drugs, including marijuana. While attending the party, Terrance Ross and his girlfriend Tessica Ussery began arguing and, at some point, Mr. Ross started choking Ms. Ussery. During this argument, defendants Wade and Young arrived at the party. Ms. Ussery noticed that defendant Wade was carrying a handgun in his waistband. Sometime thereafter, defendant Young became involved in the argument between Mr. Ross and Ms. Ussery. Defendant Young said to defendant Wade, "let me see the heat" and defendant Wade gave defendant Young the handgun. Defendant Young then shot Mr. Ross three times, hitting him in the right shoulder and in each of his legs. Ms. Ussery stated that she was standing beside defendant Young when he shot Mr. Ross the first time and that Mr. Ross did not have a gun at the time he was shot. Ms. Ussery left the house following the first shot and hid behind a car parked in the driveway of the house next door. Ms. Ussery then heard defendant Wade say from inside the house "see what that nigga got . . . shoot that nigger." She then heard a second gunshot. Ms. Ussery then heard defendant Wade say "shoot that nigger again[,]" followed by a third gunshot. Ms. Ussery then observed both defendants exit the house, get into a car, and drive away. When police arrived at the scene, Mr. Ross was in severe pain but would not cooperate with police. In corroboration of Ms. Ussery's testimony, Officer Danny Halloran of the Shelby Police Department testified that he interviewed Ms. Ussery in the early hours of 1 May 2008, and she told him that she had been arguing with Mr. Ross; defendants were at the house; she saw defendant Wade arrive at the house with a handgun; defendant Young "walk[ed] past her with a gun and [shot] the victim[;]" and defendants then left together. Defendants stipulated that they had each been convicted of a prior felony.

Although neither defendant Wade nor defendant Young testified at trial, defendants did present testimony from defense witnesses Omar McDowell and Kimberly Nicole Clark. Mr. McDowell testified that he was at the party at the house on Mint Street on 1 May 2008 doing and selling drugs. Mr. McDowell testified that Ms. Ussery had been using drugs and drinking alcohol, and he saw Mr. Ross "smack" Ms. Ussery after she asked defendant Wade "to go drop her off at somebody's house." Mr. McDowell said that Ms. Ussery then went outside. Mr. McDowell testified that he saw a handgun in Mr. Ross' right back pocket. Mr. McDowell then observed Mr. Ross pull out his

gun; Mr. Ross and defendant Young then struggled for the gun; and shots were fired during the scuffle. Mr. McDowell heard three or four shots, but "didn't see who had actually been shot[,]" because he left the house. Mr. McDowell called 911 and left the scene as he "had drugs on [him]." Ms. Clark testified that on 1 May 2008 she was using drugs at the house on Mint Street and she saw a handgun in Mr. Ross' back pocket. Ms. Clark testified that she was in the "very back room" of the house and upon hearing someone saying something about a gun, she left the residence.

Mr. Ross, the victim, was called as a rebuttal witness by the State and he testified that he was currently incarcerated. Mr. Ross stated that he had been smoking marijuana on 1 May 2008, but he "wasn't high." Mr. Ross admitted that he had been arguing and physically fighting with his girlfriend, Ms. Ussery, when defendants arrived at the house. Mr. Ross stated that Ms. Ussery had a previous relationship with defendant Wade and, during the argument, she asked defendant Wade for a ride home. Mr. Ross stated that he then "flipped on" defendants and Ms. Ussery. Mr. Ross told defendants that he "felt like [he] was being disrespected" because Ms. Ussery asked them for a ride to their house. Ms. Ussery then tried to calm Mr. Ross down. Mr. Ross testified that while his back was turned to defendants he heard someone say "[g]ive me that[,]" and then "out of the corner of [his] eye[,]" Mr. Ross saw the flash from a gunshot and he was hit by a bullet in his left leg. Mr. Ross then pushed Ms. Ussery out of the way. Mr. Ross also remembered being shot in the shoulder as he was crawling on the floor. Mr. Ross testified that he did not know who shot him. Mr. Ross testified that he did not have a gun and denied pulling a gun on defendants.

On 24 July 2009, a jury found both defendants not guilty of attempted first-degree murder, but found both defendants guilty of AWDWIKISI and possession of a firearm by a felon. Defendant Wade was sentenced to a term of 107 to 138 months imprisonment for the AWDWIKISI conviction and to a term of 16 to 20 months imprisonment for the possession of a firearm by a felon conviction. Defendant Young was sentenced to a term of 116 to 149 months imprisonment for the AWDWIKISI conviction and a term of 13 to 16 months imprisonment for the possession of a firearm by a convicted felon conviction. Defendants gave notice of appeal in open court.

## II. Defendant Young's appeal

### A. Error in sustaining the State's objections and motions to strike

**[1]** In his first argument, defendant Young contends that the trial court abused its discretion by sustaining the State's objections and motions to strike and not allowing into evidence certain testimony from State's witness Tessica Ussery and defense witnesses Omar McDowell and Kimberly Clark.

### 1. Standard of review

We have stated that "[e]ven where the trial court improperly excludes certain evidence, . . . a defendant is not entitled to a new trial unless he can establish prejudice as the result of this error." *State v. Black*, 111 N.C. App. 284, 290, 432 S.E.2d 710, 715 (1993) (citation and quotation marks omitted). The test for prejudicial error is whether

> there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

N.C. Gen. Stat. § 15A-1443(a) (2007).

### 2. Analysis

Specifically, defendant Young contends that it was error for the trial court to sustain the State's objection and motion to strike and not allow into evidence (1) testimony from Ms. Ussery, the victim's girlfriend, regarding her knowledge that the victim was a convicted felon; (2) testimony from Mr. McDowell regarding his observations of Ms. Ussery's "level of impairment on the night in question[;]" (3) Mr. McDowell's testimony that the alleged victim "was favoring his back pocket like he was getting ready to whip his gun out[;]" (4) Ms. Clark's testimony that defendants left the residence and the victim, owner of the house, and another man "left to go get a gun and to re-up[;]" and (5) Ms. Clark's testimony that she heard someone say "get my gun, get my gun, get my gun."

As to defendant Young's first argument regarding testimony from the victim's girlfriend Ms. Ussery, we note that counsel for defendant Wade, during cross-examination, asked Ms. Ussery the question, "And you were aware that [Mr. Ross, the victim] had been convicted of prior felonies?" The State objected to this question and the trial court sustained that objection. Defendant Young's counsel did not make

any comment as to the trial court's ruling upon the State's objection in this instance and did not ask any questions on cross-examination related to Ms. Ussery's knowledge of Mr. Ross' convictions. North Carolina Rule of Appellate Procedure 10(b)(1) provides that, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context" and "obtain a ruling upon the party's request, objection or motion." As defendant Young did not raise a "request, objection or motion[,]" *see id*, at trial, this argument is not properly before us.

As to defendant Young's arguments regarding the exclusion of testimony from defense witnesses Mr. McDowell and Ms. Clark, a thorough examination of the trial transcript reveals that most of the substance of the contended witness testimony was ultimately permitted into evidence. Defense counsel for Young and defense counsel for Wade were permitted to cross-examine Ms. Ussery, without objection, regarding her use of alcohol and drugs on the night in question. Mr. McDowell testified without objection that it was Mr. Ross that "pulled the gun[,]" not defendant Young. Ms. Clark testified without objection that the owner of the house, another man, and Mr. Ross, the victim, left and came back and Mr. Ross had a gun in his back pocket. Therefore, we cannot see how defendant Young was prejudiced by the trial court's sustaining the State's objections and motions to strike the witness testimony in these instances.

Even assuming arguendo that it was error for the trial court to sustain the State's objections to the above-cited testimony, there was overwhelming evidence that defendant Young, while acting in concert with defendant Wade, committed AWDWIKISI and was in possession of a firearm as a convicted felon. "Acting in concert means that the defendant is present at the scene of the crime and acts together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Graham*, 186 N.C. App. 182, 197, 650 S.E.2d 639, 649 (2007) (citation and quotation marks omitted), *appeal dismissed and disc. review denied*, 362 N.C. 477, 666 S.E.2d 765 (2008). The essential elements of the crime of AWDWIKISI pursuant to N.C. Gen. Stat. § 14-32(a) are A(1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death." *State v. Cain*, 79 N.C. App. 35, 46, 338 S.E.2d 898, 905, (citation omitted), *disc. review denied*, 316 N.C. 380, 342 S.E.2d 899 (1986). "[T]he State need only prove two elements to establish the crime of possession of a firearm by a felon:

(1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *State v. Wood*, 185 N.C. App. 227, 235, 647 S.E.2d 679, 686, *disc. review denied*, 361 N.C. 703, 655 S.E.2d 402 (2007); *see also* N.C. Gen. Stat. § 14-415.1(a) (2007). As to whether defendants were acting in concert, the State presented evidence that on 1 May 2008 defendants arrived together at the house located on Mint Street; Ms. Ussery heard defendant Young say to defendant Wade "let me see the heat" and Mr. Ross heard a similar statement just before he was shot; defendant Wade handed defendant Young the firearm; defendant Wade encouraged defendant Young to continue shooting Mr. Ross; and defendants fled the scene in the same car. As to AWDWIKISI, Ms. Ussery observed defendant Wade hand defendant Young the firearm; while standing next to defendant Young, Ms. Ussery observed defendant Young shoot Mr. Ross in the leg; then after she exited the house, she heard defendant Wade encouraging defendant Young to shoot Mr. Ross again, which was followed by the sound of two more gunshots. Officer Halloran corroborated Ms. Ussery's testimony by stating that during his interview with her on the night in question, Ms. Ussery told him that defendant Young "walk[ed] past her with a gun" and shot Mr. Ross. Mr. Ross and Officer Roberts testified that Mr. Ross received three gunshot wounds, one in the shoulder and one in each leg. Mr. Ross' testimony further supports Ms. Ussery's observations, even though Mr. Ross could not identify either defendant as the person that shot him. Mr. Ross testified that while his back was turned to defendants he heard someone say "[g]ive me that" and then "out of the corner of [his] eye[,]" Mr. Ross saw the flash from a gunshot and felt the bullet hit his left leg. This testimony is similar to the testimony that Ms. Ussery gave regarding defendants' statements before the shooting. It can also be inferred from Mr. Ross' testimony that one of the defendants, acting in concert with the other defendant, shot him, as Mr. Ross had just confronted both defendants regarding Ms. Ussery's request for a ride home. As to possession of a firearm by a felon, Ms. Ussery observed defendant Wade carrying a firearm and defendant Wade handed that firearm to defendant Young. Each defendant stipulated that he had been convicted of a prior felony. As there was no "reasonable possibility" had the testimony been admitted, that "a different result would have been reached at the trial[,]" defendant failed to meet his burden of showing prejudice. *See* N.C. Gen. Stat. § 15A-1443(a). Accordingly, defendant Young's arguments are overruled.

B. Testimony from a probable cause hearing

**[2]** Defendant Young next contends that the trial court "erred in permitting the prosecutor, over objection, to state before the jury the prosecutor's recollection of the alleged victim's testimony at a probable cause hearing regarding which the alleged victim denied recollection." Defendant Young further argues that as there was no transcript of the probable cause hearing, the prosecutor's questions amounted to unsworn testimony by the prosecutor as to what the victim said at that hearing. Defendant Young contends that allowing the prosecutor to "testify" amounted to prejudicial error.

After the State's rebuttal witness Mr. Ross stated that he did not remember his testimony from the 12 June 2008 probable cause hearing, the trial court permitted the State to conduct a *voir dire* examination of Mr. Ross to refresh his recollection. Following the *voir dire*, the trial court limited the State's impeachment of Mr. Ross as follows:

> Okay, Let's stop here. What originally started with [the State] ask[ing] [Mr. Ross] if he remembered what he said at probable cause. He says No. All right. That's—now giving him information with the hopes of having him to recollect what he said.

> Now, if [Mr. Ross] gives additional testimony inconsistent with what he said at probable cause [hearing], then you can ask him about what he said at probable cause. But I'm not going to let you go through litany to the jury. Because there has been no statements he's given that are inconsistent.

The State then questioned Mr. Ross regarding what happened the night he was shot. Mr. Ross testified that while he was arguing with Ms. Ussery, he turned his back to defendants and then heard someone say "[g]ive me that" and then "out of the corner of [his] eye" Mr. Ross saw the flash from a gunshot and felt the bullet hit him in his left leg. Mr. Ross then remembered being shot in the shoulder as he was crawling on the floor. Mr. Ross testified that he did not know who shot him and he did not have a gun when he was shot. Following this testimony, the trial court, over defendant Young's standing objection, permitted the State to impeach Mr. Ross regarding the following inconsistent statements he made at the 12 June 2008 probable cause hearing: that Mr. Ross saw defendant Young shoot him; that defendant Young got the gun from defendant Wade; that Mr. Ross was first hit in the left thigh and fell to the ground; that defendant Young hit him with the gun, defendant Young dropped the gun, and there was a struggle for the gun; that he tried to get up on his one leg but defendant Young shot his right thigh; that he heard someone walk up and

shoot him in the shoulder; and that he heard some people leaving but defendant Wade came up to him and said "are you still alive?" In response to the State's questions regarding his inconsistent testimony at the 12 June probable cause hearing, Mr. Ross consistently answered that he remembered "what happened that night" but he could not recall exactly what was said at the probable cause hearing.

N.C. Gen. Stat. § 8C-1, Rule 607 (2007), states that "[t]he credibility of a witness may be attacked by any party, including the party calling him." "Prior statements by a defendant are a proper subject of inquiry by cross-examination." *State v. Aguallo*, 322 N.C. 818, 824, 370 S.E.2d 676, 679 (1988). However, "(1) the scope of cross examination is subject to the discretion of the trial judge; and (2) the questions offered on cross examination must be asked in good faith." *Id.* As stated above, an evidentiary error does not necessitate a new trial unless the erroneous admission was prejudicial. *Black*, 111 N.C. App. at 290, 432 S.E.2d at 715. We note that defendant Young makes no argument that the State's impeachment was done in bad faith or that the State did not comply with the trial court's limitations on the impeachment of Mr. Ross' prior statements. Even assuming *arguendo* that it was error for the trial court to permit the State's impeachment of Mr. Ross regarding inconsistent statements he made at the 12 June 2008 probable cause hearing, the admission of this evidence was not prejudicial error, as the substantive information regarding what happened on the night of 1 May 2008 contained in the questions had already been introduced into evidence by Ms. Ussery on direct examination. Therefore, we cannot say that there was a "reasonable possibility" that had the State not been permitted to impeach Mr. Ross regarding his prior inconsistent statements from the probable cause hearing, "a different result would have been reached at the trial[.]" *See* N.C. Gen. Stat. § 15A-1443(a). Also, as stated above, there was overwhelming evidence upon which the jury could convict defendant Young of AWDWIKISI and possession of a firearm by a felon. Accordingly, defendant failed to meet his burden of showing prejudice. *See id.* We overrule defendant Young's second argument and find no prejudicial error in his trial.

### III. Defendant Wade's appeal

#### A. Error in sustaining the State's objections

**[3]** Defendant Wade first contends that "the trial court erred in sustaining the State's objection to testimony that Terrance Ross was favoring his back pocket like he was getting ready to whip his gun out, and in sustaining the State's objection to testimony that [Kimberly] Clark heard [Mr.] Ross saying he was going to get his gun,

and instructing the jury to disregard this evidence, as this went directly to the validity of the assertion of self-defense by the defendants" and was therefore prejudicial to his case. As noted above, an evidentiary error does not necessitate a new trial unless the erroneous admission was prejudicial. *Black*, 111 N.C. App. at 290, 432 S.E.2d at 715; N.C. Gen. Stat. § 15A-1443(a).

As stated above, Mr. McDowell was permitted to testify, without objection, that it was Mr. Ross who "pulled the gun[,]" not defendant Young. Ms. Clark testified without objection that the owner of the house, another man, and Mr. Ross, the victim, left and came back and Mr. Ross had a gun in his back pocket. Therefore, we cannot see how defendant Young was prejudiced by the trial court's sustaining the State's objections and motions to strike in these instances. Even assuming that it was error for the trial court to sustain the State's objections, there was overwhelming evidence that defendant Wade, while acting in concert with defendant Young, committed AWDWIKISI and was in possession of a firearm as a convicted felon. The State's evidence showed that defendants arrived together; defendant Wade handed defendant Young the handgun that defendant Young used to shoot Mr. Ross; defendant Wade encouraged defendant Young to continue shooting Mr. Ross; defendants fled the scene together in the same car; and both defendants stipulated that they had been convicted of a prior felony. There was no "reasonable possibility" that if the above-cited testimony had been admitted, "a different result would have been reached at the trial" and defendant Wade failed to meet his burden of showing prejudice. *See* N.C. Gen. Stat. § 15A-1443(a). Accordingly, defendant Wade's arguments are overruled.

B. Denial of defendant's motion to dismiss

[4] Defendant Wade next contends that the trial court erred in denying his motions to dismiss based on insufficiency of the evidence. Specifically, defendant Wade argues that Ms. Ussery and Mr. Ross' testimony was not clear enough to determine who actually shot Mr. Ross. We have stated that "[t]he denial of a motion to dismiss for insufficient evidence is a question of law, . . . which this Court reviews *de novo*[.]" *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). Additionally,

> [w]hen ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. Any contradictions or conflicts in the evidence are resolved in favor of the State, . . . and evidence unfavorable to the State is not

considered. The trial court must decide only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

*State v. Miller*, 363 N.C. 96, 98 99, 678 S.E.2d 592, 594 (2009) (quotation marks and citations omitted). We note that Ms. Ussery testified that she saw defendant Wade hand defendant Young a handgun and, while standing next to defendant Young, she saw defendant Young shoot Mr. Ross. Even though Mr. Ross testified that he did not know who shot him, as his back was turned, "[a]ny contradictions or conflicts" in Ms. Ussery's or Mr. Ross' testimony "are resolved in favor of the State[.]" *See id.* Also considering the above analysis regarding the State's evidence against defendants, we hold that there was "[s]ubstantial evidence of each essential element of the offense[s] charged" and of defendant Wade being one of "the perpetrator[s] of the offense." *See id.* Accordingly, the trial court did not error in denying defendant Wade's motion to dismiss and his argument is overruled.

C.  Testimony from the probable cause hearing

**[5]** Defendant Wade next contends that the trial court committed error, or in the alternative plain error, in permitting the prosecutor to question Mr. Ross regarding his testimony at the probable cause hearing, as this questioning amounted to permitting the prosecutor "to place in front of the jury through his own words what Terrance Ross supposedly said at the probable cause hearing."

As stated above, to properly preserve an issue for appellate review, a party must present to the trial court "a timely request, objection or motion stating the specific grounds for the ruling" and "obtain a ruling upon the party's request, objection or motion." N.C.R. App. P. 10(b)(1). However, North Carolina Rule of Appellate Procedure 10(c)(4) also provides that

> [i]n criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(c)(4). "[P]lain error analysis applies only to jury instructions and evidentiary matters[.]" *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39 40 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed.

2d 795 (2003). For an appellate court to find plain error, it must first be convinced that, "absent the error, the jury would have reached a different verdict." *State v. Reid*, 322 N.C. 309, 313, 367 S.E.2d 672, 674 (1988) (citation omitted). "[T]he defendant has the burden of showing that the error constituted plain error[.]" *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997).

Here, the record shows that counsel for defendant Wade made no objection to the prosecutor's questions regarding statements made by Mr. Ross at the 12 June 2008 probable cause hearing. Accordingly, we apply a plain error analysis to defendant Wade's argument. *See* N.C.R. App. P. 10(c)(4). But before a ruling can be plain error, it must be error. We have already addressed essentially the same argument by defendant Young above, and found no error as to the prosecutor's questions to Mr. Ross regarding his inconsistent statements made at the probable cause hearing. In addition, we have already determined that the State presented overwhelming evidence upon which the jury could convict both defendants of AWDWIKISI and possession of a firearm by a felon. Accordingly, defendant Wade fails to carry his burden to show plain error and we overrule defendant Young's argument.

## D. Inconsistent verdict

[6] Defendant Wade next contends that "the trial court erred by accepting the verdict as to defendant Wade of guilty of assault with a deadly weapon with intent to kill inflicting serious injury, as the jury necessarily found no intent to kill when it acquitted [defendant Wade] of attempted first degree murder, of which the intent to kill was a necessary element, and therefore these verdicts are fatally inconsistent."

Our Supreme Court has noted that:

> In North Carolina jurisprudence, a distinction is drawn between verdicts that are merely inconsistent and those which are legally inconsistent *and* contradictory. *See State v. Meshaw*, 246 N.C. 205, 207 08, 98 S.E.2d 13, 15 (1957), *overruled in part on other grounds by State v. Speckman*, 326 N.C. 576, 580, 391 S.E.2d 165, 168 (1990). It is firmly established that when there is sufficient evidence to support a verdict, "mere inconsistency will not invalidate the verdict." *State v. Davis*, 214 N.C. 787, 794, 1 S.E.2d 104, 108 (1939) (citing *State v. Sigmon*, 190 N.C. 684, 130 S.E. 854 (1925)). However, when a verdict is inconsistent and contradictory, a defendant is entitled to relief. *Meshaw*, 246 N.C. at 207-08, 98 S.E.2d at 15.

*State v. Mumford*, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010). A verdict is inconsistent when there is "an apparent flaw in the jury's logic [such as when] . . . a finding of guilt in the greater offense would establish guilt in the lesser offense." *Id.* at 400, 699 S.E.2d at 915. "Verdicts are mutually exclusive when a verdict "purports to establish that the [defendant] is guilty of two separate and distinct criminal offenses, the nature of which is such that guilt of one necessarily excludes guilt of the other.' " *Id.* (quoting *Meshaw*, 246 N.C. at 207, 98 S.E.2d at 15). "The elements of attempted first-degree murder are: (1) a specific intent to kill another; (2) an overt act calculated to carry out that intent, which goes beyond mere preparation; (3) malice, premeditation, and deliberation accompanying the act; and (4) failure to complete the intended killing." *State v. Tirado*, 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004). As stated above, the elements of AWDWIKISI are: "(1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death." *Cain*, 79 N.C. App. at 46, 338 S.E.2d at 905. The verdict here is not mutually exclusive as the "guilt of one [does not] necessarily exclude[] guilt of the other." *See Mumford*, 364 N.C. at 400, 699 S.E.2d at 915. Even though attempted first-degree murder and AWDWIKISI have two like elements, (1) the intent to kill and (2) failure to kill the victim, the rest of the elements of each offense are different. Therefore, defendant Wade incorrectly assumes that the "jury necessarily found no intent to kill when it acquitted [defendant Wade] of attempted first degree murder[,]" as a jury could have found that defendants had the intent to kill but not the "malice, premeditation, and deliberation[,]" required for attempted first-degree murder and therefore acquitted them on that charge. *See Tirado*, 358 N.C. at 579, 599 S.E.2d at 534. But on the same facts, the jury could have found that defendants, while acting in concert, had the intent to kill, committed an assault with a deadly weapon, and inflicted a serious injury to Mr. Ross, so the jury found defendant Wade guilty of AWDWIKISI. Thus, defendant Wade's acquittal for attempted first-degree murder and his conviction for AWDWIKISI were not inconsistent or mutually exclusive. Accordingly, defendant Wade's argument is overruled.

## IV. Conclusion

For the foregoing reasons, we find no prejudicial error in defendant Young's and defendant Wade's trial.

NO PREJUDICIAL ERROR.

Chief Judge MARTIN and Judge STEPHENS concur.